STATE ex. rel. NATIONAL UNION INSURANCE COMPAN-
IES OF PITTSBURGH, PENNSYLVANIA, and POORE,
McKENZIE, ROTH and ROBISCHON, Attorneys, Peti-
tioners, v. The DISTRICT COURT of the NINTH JUDI-
CIAL DISTRICT of the State of Montana in and for the
County of Glacier and HONORABLE EUGENE B. FOOT
et al., Defendants.

No. 11476.
Decided June 3, 1968.
441 P.2d 305

Robert A. Poore (argued), Butte, for petitioners.
John P. Moore (argued), Cut Bank, for defendants.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the
Opinion of the Court.

This is an original proceeding in which the petitioner seeks an appropriate writ.

Generally, the application contained these allegations: That a civil action was filed in the District Court of Glacier County against Ray Abercrombie, doing business as Abercrombie Construction Company, and Jerry Abercrombie, seeking damages for personal injuries received in an accident. At the time of the accident the plaintiff, one French, was employed by the National Tank Company which had a contract to lay pipe in a trench which Ray Abercrombie was digging for Humble Oil Company. Jerry Abercrombie was an employee of his father, Ray Abercrombie. Ray Abercrombie carried a policy of liability insurance with the petitioner National Union Insurance Companies of Pittsburgh, Pennsylvania, hereinafter referred to as National. National entered upon the defense of the suit for Ray Abercrombie and also extended to Jerry Abercrombie what is known as a "courtesy defense" under a written agreement which provided that National assumed no responsibility as to any judgment against defendant Jerry Abercrombie and also could withdraw the courtesy defense upon notice.

National engaged professional legal services to defend the French suit and on December 26, 1967, though its agency, sent an "excess letter" to Ray Abercrombie advising him that his coverage was limited to the amount set forth in the policies and the amount sought in the suit exceeded such amount and if he desired another attorney to represent him above the policy limits he should engage one.

Ray Abercrombie consulted his personal counsel; said counsel thereupon entered into a series of communications directed to defending counsel; appeared at a pre-trial conference "specially" and "not as counsel of record;" and in the course of said hearing joined with French's counsel in putting Ray Abercrombie on the witness stand, inquiring into matters pertaining to the insurance coverage and excess exposure, neither

of which were issues in the case and had nothing to do with the pre-trial conferencce.

Defending counsel strenuously objected to this procedure and to the comments of personal counsel, contending that he was not a counsel of record and had no authority to appear and, further, the procedure constituted a direct challenge to defending counsel's authority to represent Ray Abercrombie and the same was devastating so far as the relationship between attorney and client was conccerned. Within a few days after this pre-trial conference concluded, Ray Abercrombie's personal counsel, by letter to defending counsel, directed the addition of other parties defendant.

Thereafter defending counsel, being of the opinion that the professional relationship of attorney and client between themselves and Ray Abercrombie could no longer be carried on within the concept of that relationship, sought to withdraw and substitute present defending counsel. Personal counsel refused to permit Ray Abercrombie to consent to this substitution. Present defending counsel, however, were added as counsel of record and then defense counsel filed formal motion for leave to withdraw and this motion was granted by the court.

During the time the motion was pending before the court National notified Jerry Abercrombie, who was being represented by the same personal counsel as his father, that it was withdrawing its courtesy defense and that he should engage his own attorney. Thereafter present defense counsel filed a motion to withdraw as attorneys of record for Jerry Abercrombie and, at the time noticed for hearing thereon, personal counsel appeared as "special counsel" and filed a motion in opposition thereto. The motion to withdraw as attorneys of record for Jerry Abercrombie was denied by the court.

Because the order of the district court denying the motion for leave to withdraw was not an appealable order and petitioners had no other plain, speedy or adequate remedy,

this original proceeding was instituted on April 9, 1968. Following an ex parte presentation this court issued an order to show cause on the same day and the return day was later continued at the request of the parties and came on to be heard on May. 8, 1968.

The respondents, being the district court and the acting judge thereof, Jerry Abercrombie, and his personal counsel, filed a joint answer in which, inter alia, they alleged that no policy of insurance had been delivered to Ray Abercrombie; that while the petitioner insurance company had entered upon a full and complete defense of the French suit, that the insurance company had contracted to insure both Ray B. Abercrombie and Jerry Abercrombie "for full coverage" against liability; that the signature of Jerry Abercrombie to the "courtesy defense agreement" was obtained as a result of misunderstanding and ignorance on the part of Jerry Abercrombie as to the terms of the policy or policies which were not issued or delivered; that the alleged "courtesy defense agreement" is without consideration, unethical, unconscionable, contrary to public policy, sham, frivolous, deceitful, and null and void.

It is further alleged that the sending and delivery of the "excess letter" three and one-half weeks before trial, after an action has been pending for over two years, is a violation of duty of good faith on part of insurer, negligent, unethical, unconscionable, unjustified, contrary to public policy, over-reaching, grossly inequitable, and a void act insofar as the insureds are concerned.

It is further alleged that nothing contained in any communications from personal counsel was detrimental to the defense strategy but, on the contrary, served to enlighten defense counsel. Respondents prayed that the petition be denied. While many other allegations appear in the answer, those mentioned will suffice for our discussion of the issue involved.

We will refer to the exhibits annexed to the petition that are pertinent. First, we have the excess letter from the insur-

ance company to Ray B. Abercrombie which, after comment-ing that the damages sought are in excess of the liability limits of the policy, states: "You may, if you wish, engage your personal attorney, at your own expense, for the protection of your interests beyond the limits of coverage afforded by your policy.

"All information concerning the case in our possession is at all times, at your request, available to you, or your attorney." The names and address of the defense attorneys were also stated.

On January 2, 1968, a letter was written to defense counsel on the letter head of personal counsel, signed by Ray Abercrombie, which requested that the personal attorney be furnished with all correspondence and investigative reports. On January 10, 1968, defense counsel advised Ray Abercrombie by letter that they were sending to the personal attorney all of the correspondence and investigative reports which they deemed pertinent and advised further they would be glad to talk to him and to his personal counsel at any time.

Under date of January 11, 1968, the personal attorney wrote defense counsel advising that Ray B. Abercrombie, doing business as Abercrombie Construction Company of Cut Bank, Montana, and Jerry Abercrombie must hold the insurance company completely responsible and liable for a full defense to, and full indemnity against, the entire demand of the French suit by reasons of their conduct in the matter.

The grounds for the demand were listed as (1) that while the French case was commenced December 28, 1965, and the insurer has proceeded to conduct a full defense thereof as to the entire demand in the complaint up to the present time, yet no opportunity had been given insureds to participate in any proceedings, including discovery; (2) that the undated excess letter of December 26, 1967, two years after commencement of the action was the first time that the Abercrombies were informed a complete defense was not being conducted;

(3). that the policy of insurance ordered by Abercrombies was never delivered to Abercrombies and that the two policies written to cover the period October 10, 1964 to October 10, 1965, were incorrect as to the amount and not as ordered; (4) bad faith, breach of contract, lack of interest and sincerity on the insurer's part; (5) bad faith and fraud on the insurer's part in misleading and tricking Jerry Abercrombie into signing the purported waiver agreement; (6) failure of insurer to enter into any compromise settlement negotiations; (7) failure of the insurer to bring in as third party defendant, the National Tank Company, the employer of French. This letter further stated: "This is to further inform you that in view of the foregoing. Abercrombies are not going to employ special counsel for themselves to assist in any portion of the defense of this action as this is the insurer's full, legal, moral and equitable responsibility at this point."

On January 12, 1968, personal counsel appeared at the pretrial conference as hereinbefore alleged by petitioners.

On January 16, 1968, personal counsel wrote defense counsel stating that he felt Humble Oil Company should be made a third party defendant and asked that this be done.

Defense counsel on January 17, 1968, wrote personal counsel in response to his letter of January 11, 1968, that the insurance company was willing to extend a defense and coverage to Ray Abercrombie, doing business as Abercrombie Construction Company, up to the policy limits of $50,000, in accordance with the terms of the contract of insurance. However, they advised that Jerry Abercrombie was an employee of the Abercrombie Construction Company and is not covered or insured for the accident involved. They further advised that the fact situation, with respect to the insurance policies which personal counsel had related, was not correct and gave an explanation why. After detailing the views of defense counsel on the matters at issue, defense counsel referred to possible breach of the policy provisions by personal counsel to the detriment of

the insured because of the unorthodox actions of personal counsel. The letter closed with the expression that it was hoped personal counsel would be willing to cooperate with defense counsel in the defense of the lawsuit for the benefit of the defendants.

On January 19, 1968, personal counsel replied to defense counsel's letter of January 17, 1968, and stated that he could not agree with the statements concerning the insurance policies or the facts and that the matters mentioned in previous correspondence still stood and were confirmed. In addition to the other matters, personal counsel stated that Humble Oil Company and National Tank Company should be brought into the action as third party defendants and if the insurance company refused to do so it must be responsible for the consequences. He further stated: "It should not be necessary for us to inform a competent defense law firm such as yours of the manner and procedure necessary to bring in a third party defendant. We demand that you do so."

On January 24, 1968, defense counsel addressed this letter to personal counsel:

"By reason of the relationship which have come into existence since you interposed 'specially' in this case on behalf of Ray Abercrombie and Jerry Abercrombie, we are of the opinion that a serious conflict of interests exists as between the insurance company and the Abercrombies, and that it is no longer proper for us to represent either.

"The situation is such that it is necessary for each party to be represented by separate attorneys who can deal at arms length.

"We have advised the insurance company by telephone today and they have agreed that we may withdraw as attorneys of record in this case and that we may refer the matter for defense to the law firm of Poore, McKenzie, Roth & Robischon, Silver Bow Block, P. O. Box 341, Butte, Montana, 59701.

"Enclosed is form of substitution of attorneys to be signed

by the Abercrombies, consent to the substitution of attorneys signed by me and agreement to be substituted to be signed by Poore, McKenzie, Roth and Robischon. I shall assume that either you or the Poore, McKenzie firm will give notice of substitution to the attorneys for the plaintiff."

On January 25, 1968, personal counsel wrote defense counsel:

"This will acknowledge your letter of January 24, 1968, which was just now handed to me. I have sent you a telegram advising that demand is made for protecting Abercrombies against the statute of limitations on bringing in as third party defendants National Tank Company and Humble Oil.

"This is to remind you that since the Insurance Company National Union Fire Insurance Company of Pittsburgh, Pennsylvania, has assumed the complete defense of this action in the past and on the basis of the other grounds herefor which we have pointed out to you in previous correspondence, this Insurance Company is held liable and responsible by Abercrombies for full indemnity against the loss here and the pending action.

"At this point Abercrombies are in no position to agree or disagree with any matters concerning the handling of this case. The Insurer has assumed this on a 100% basis and this STANDS.

"This is to therefore specifically advise that Abercrombies cannot take any action whatsoever towards the matters of substitution of attorneys. The Insurer acts at its own peril in this regard and in our opinion this is further evidence of lack of good faith and further lack of adequate protection for the insured as required under any insurance agreement.

"We trust that you realize that the amount demanded in this action can clearly wipe out a lifetime of hard work on the part of the Abercrombies if the plaintiffs are successful. As you must realize there are many possibilities of success here for the plaintiff. With such risk and exposure we will

continue to do our utmost to protect Abercrombies at all times and only wish that the Insurer had the same attitude.

"Be advised that Abercrombies will continue to lend their full cooperation and assistance in any regard which is requested.

"We are herewith returning to you unsigned, the proposed substitution documents."

There appears little need to go further in discussing other exhibits and the transcript of the so-called pre-trial conference. It seems clear to this Court that while personal counsel stresses his desire to cooperate with the insurance counsel he consistently interjects his own views as to the proper procedure to be followed and not only suggests that such course be followed but demands that it be. Where one is acting in the capacity of personal counsel for an insured and in such position having the confidence of his client, to critically and consistently imply that such client's interest is not being protected by other counsel employed by the insurance carrier to defend his interest in pending litigation, the only result is the destruction of the professional relationship.

If it be true that the course of defense tactics being followed in this cause by counsel for the insurer are incorrect and thereby injury and damage is suffered by the insured, they can be compensated for by appropriate action. Appropriate action is not denying defense counsel the right to withdraw a "courtesy defense," actually such withdrawal would greatly strengthen the position of the contended insured, if it later appears that he was actually an insured. By this comment we express no opinion as to the relationship existing at any time heretofore, or at this time, between Jerry Abercrombie and the insurance carrier.

Respondent district court was in error when it denied the motion to permit present counsel to withdraw as attorneys of record for Jerry Abercrombie.

Let a writ of supervisory control issue.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN CONWAY HARRISON, concur.