248 So.2d 479 (1971)
William FISHER, Jr., Petitioner,
v.
STATE of Florida, Respondent.
William FISHER, Jr., Appellant,
v.
STATE of Florida, Appellee.
Nos. 39528, 39545.
Supreme Court of Florida.
May 12, 1971.
*480 Robert D. Bell of Fisher, Hepner & Hertz, Pensacola, for petitioner-appellant.
Robert L. Shevin, Atty. Gen., and P.A. Pacyna, Asst. Atty. Gen., for respondent-appellee.
*481 DREW, Justice (retired).
The same final judgment constitutes the basis for both of the above cases and they have, therefore, been consolidated here for argument and will be disposed of by one decision.
June 18, 1968 William Fisher, Jr., for his firm Fisher, Hepner and Hertz, wrote a letter to Mr. Franklin F. Van Alst and Mr. Franklin F. Van Alst, Jr. advising them of the progress of an automobile damages suit that he was defending for them on behalf of his client, National Service Fire Insurance Co. (the carrier for the Van Alsts) and of the possibility that such insurance company was then insolvent and that a receiver would probably be appointed for such company in the near future. The Van Alsts were advised by Mr. Fisher that the case was ready for trial (but had not been set) and that he had noticed the plaintiff for the taking of depositions on June 25th. Mr. Fisher's letter concluded with the following two paragraphs:
"This letter is written to you at this time, as we are writing other insured whose defense we have been assigned by National Service Fire Insurance Company, in order to act in utmost good faith toward you and the other so situated insured. In the event the company should survive, presumably either this firm or another selected by the carrier will continue to defend these cases and presumably will have funds available either to settle the cases or pay any judgment which might be rendered against you. In the event the company does not survive it will be necessary for you should you wish to continue the defense of the case to procure counsel of your own choice and at your own expense to afford such defense. In such event should you want us to continue to defend the cases it will be necessary for you to make arrangements with us to such effect or you will certainly be at liberty to retain any other counsel of your choice to do so. In that event should you not make your own arrangements with us for further defense or in the event you should arrange with other counsel, it will be necessary for us to file a motion with the court in the pending cases for leave to withdraw as attorneys of record in your behalf and seek an order authorizing such withdrawal. In such event you will be furnished with a copy of the motion and a notice of the time and place when it will be heard by the court, to afford you the opportunity to be present in person or by counsel or both.
"It is regrettable that this situation has developed but its development has been and is entirely beyond our control. We will keep you advised as to any and all further developments which should go one way or the other within the next week or two."
On the following August 24, Mr. Fisher received a letter from the Deputy Ancillary Receiver of the National Service Fire Insurance Company enclosing a copy of an Order of the Circuit Court of Leon County adjudging such company to be insolvent and appointing the Insurance Commissioner of Florida as Receiver. The letter advised:
"* * * Your firm is discharged, in accordance with the Court Order, of and from employment by National Service Fire Insurance Company in connection with the conduct of its insurance business and the defense of litigation brought by persons against policyholders of National Service Fire Insurance Company, and no longer represent National Service Fire Insurance Company.
"We request that you notify the policyholders of National Service Fire Insurance Company for whom you have appeared at the behest of National Service Fire Insurance Company of your withdrawal in each of their respective cases, sending copies of such notice of withdrawal to this office."
*482 Promptly on receipt of the above information,[1] Mr. Fisher served notice on the Van Alsts, opposing counsel and the Receiver that he would apply to Judge McLane on September 3 for leave to withdraw in the cause as requested in the letter from the Receiver and because of the insolvency of his client. On the day noticed, Judge McLane entered his Order allowing withdrawal and relieving Mr. Fisher and his firm "of and from any and all obligation to further defend the above-styled cause and that as and from the date of the entry of this order the said firm, its members and associates are no longer responsible in any manner for the defense of such cause." Eight days later Judge McLane, ex parte, determined that the Order of September 3 was "erroneously entered", set it aside and reinstated Mr. Fisher and his firm as counsel of record for the Van Alsts  apparently relying on the Illinois case of Fessler v. Weiss, 348 Ill. App. 21, 107 N.E.2d 795.[2]
At this point, instead of returning to the trial judge in an effort to convince him that the order reinstating his firm was inadvertent and should be reconsidered, Mr. Fisher chose to initiate proceedings in the appellate courts, thereby precipitating a clash of wills between a conscientious trial judge, obviously convinced that the insolvency of the insurance company did not relieve Mr. Fisher and his firm of "responsibility to defend Frank Van Alst and Franklin Van Alst, Jr. because of the attorney-client relationship existing between them" and that it was his judicial duty to enforce that obligation, and an equally conscientious member of the Bar that he had no such obligation under the circumstances. It was, as the later events unfolded, a case of the irresistible force meeting the immovable object; and, as each chapter ended and another began, it appears to us that both judge and lawyer let the whole matter get out of focus and allowed the contest to become one of a clash of personalities. In any event, the subsequent events are accurately enucleated in the following recitals from the Judgment of Contempt which was entered over a year later.
"The defendant, William Fisher, Jr., a member of the Bar of this Court, appeared as counsel of record for the individual defendants in two cases, styled Jesse Tharp vs. Frank Van Alst and Franklin Van Alst, Case No. 67-1223, undertaking their defense by filing pleadings, attending hearings and presentation of arguments on behalf of said defendants. Some fourteen months after filing of the lawsuits, the defendant presented a motion that he and the members of his firm be relieved as attorneys of record in each case, asserting the insolvency of the liability insurance carrier of the defendants. The insurance company was not and is not a party defendant, nor was there suggestion of it until the filing of said motion. The Court entered the requested order, but eight days later being of the view that it was erroneously entered, reinstated the defendant and his firm as counsel for the defendants in each case. The order reinstating counsel recited they had a personal responsibility to the defendants. At suit of the defendant, the order was before the Appellate Courts of this State on three occasions. The appellate proceedings appear as, Fisher, et al vs. McLane, (Fla.) 218 So.2d 441; Fisher vs. McLane, [Fla.App.] 224 So.2d 733, and Fisher vs. McLane, Case No. 38,954, [232 So.2d 177] Supreme Court of Florida, Certiorari denied October 13, 1969, Petition for rehearing denied November 13, 1969. Following the denial of the petition for rehearing, *483 in the last review, the trial court by order set both cases, previously consolidated, for trial on February 11, 1970. Defendant initiated correspondence directed to the Court, stating he would not represent the Van Alsts. The Court advised that in the absence of consent by the Van Alsts to his withdrawal, the Court expected the defendant to represent the Van Alsts at the trial. The correspondence is attached to the Court file in Cases No. 67-1223 and 67-1225. Upon calling the cases for trial, plaintiff's counsel, in accordance with a praecipe filed, requested dismissal of No. 67-1223, Ronnie Jourdan vs. Van Alst, and said cause was dismissed in open Court. Thereupon, counsel for plaintiff announced ready for trial in No. 67-1225, Tharp v. Van Alst. The defendant, although duly notified of the trial by an appropriate order setting the case for trial, failed and refused to appear at said trial. Rule to show cause issued and was served upon the defendant. Before the Court, defendant, after being informed of the accusation against him, was given the opportunity to present evidence of excusing or mitigating circumstances. The evidence presented by the defendant constituted no excuse for his failure to appear and represent the defendants at the trial of Tharp v. Van Alst, for it is a mere repetition of circumstances and matters previously rejected by this Court and thereafter reviewed on three occasions at suit of the defendant by the Appellate Courts of the State of Florida. The Court announced in open Court its judgment that the defendant was guilty of contempt, but deferred entering formal judgment in writing and sentence until February 12, 1970. Further proceedings herein were suspended by reason of litigation initiated by the defendant in the United States District Court for the Northern District of Florida, which suit was dismissed by reason of lack of jurisdiction. After due notice, the defendant is now before the Court for further proceedings of contempt. Subsequent to the issuance of the rule to show cause the Van Alsts have employed their personal attorney, and have consented in writing to the release of the defendant as their attorney. * * *"
Mr. Fisher will be referred to hereafter as Petitioner and Judge McLane will be referred to as Respondent, the trial court or trial judge.
Petitioner asserts here that the Judgment of Contempt is erroneous because it is necessarily predicated on the void Order of September 11, 1968 reinstating his firm. He argues that the September Order is void "because it purports to require Petitioner to represent a client whose selfish interests are contrary" to his and "that it is in the selfish interests of Van Alst for petitioner to spend a great deal of time and a substantial amount of his own money in taking depositions of the plaintiffs and depositions of the plaintiffs' doctors; whereas it is in petitioner's selfish interest to spend a minimum of time and no money in the defense of the action. This requirement that petitioner represent a client whose interests are directly opposed to his own is violative of the professional standards of ethics promulgated by the Supreme Court for the government of the Florida Bar and could and should subject petitioner to serious disciplinary action by the Florida Bar and the Court."
Moreover, Petitioner asserts, such Order of September 11 imposes upon him an involuntary servitude contrary to Section 1 of Amendment 13 of the United States Constitution, deprives him of his property without due process of law contrary to Clause 3 of Section 1 of the 14th Amendment of the United States Constitution and denies to him the equal protection of the laws contrary to Clause 4 of Section 1 of the 14th Amendment to the United States Constitution.
These contentions might at first blush appear to be using an atomic bomb to excavate an ant hill but, as we shall see later, to recognize power in a trial judge to compel an attorney who has once appeared as counsel in a case to remain in such case *484 against his wishes (except in unusual circumstances which we will discuss) might well result in a violation of the rights protected by these fundamental provisions.
The relationship of attorney and client is one involving great personal and professional integrity and responsibility on the part of the lawyer and an equal confidence and trust on the part of the client. Disclosures of a client to his attorney are equated with disclosures to a priest. They are protected by the law of the land and hundreds of years of tradition and precedent. The relationship is governed  not only by laws  but by rules of ethics, breaches of which can result in disbarment, punishment worse that death to a conscientious practitioner. Such relationship requires absolute confidence in the lawyer by the client and an equal confidence in the client by his lawyer. Shotgun weddings and enforced lawyer-client relationships fall in the same category.
Every lawyer is charged with the knowledge that "It is unprofessional to represent conflicting interests."[3] He also knows that "The lawyer owes entire devotion to the interests of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability to the end that nothing be taken or be withheld from him, save by the rules of law legally applied" and that "No fear of judicial disfavor or public unpopularity shall restrain him from the full discharge of his duty."[4] He also knows that the penalty for disregarding these rules can be and often is suspension or disbarment.
With these principles in mind, we now turn to the simple question on which this long litigation turns. When and under what circumstances may an attorney of record in a civil proceeding[5] be allowed to withdraw in a case? In our appellate rules there is a provision that an attorney may not withdraw from a cause pending here unless his withdrawal is sanctioned by the Court.[6] Rules of Civil Procedure provide that attorneys may be substituted at any time by order of the Court.[7] This rule is made applicable in probate proceedings.[8] There is no counterpart in Rules of Criminal Procedure, but every trial judge is responsible for and has the power to enforce the orderly conduct of proceedings before him. He has the inherent power to require that attorneys who appear in cases before him conduct themselves in such manner, and follow such procedures, as will not interfere with or unduly delay the effective disposition of such cases. This includes, necessarily, the power to require his consent to withdraw. This power, however, derives from the responsibility to effectively conduct the business of the Court. It does not mean that the requirement of consent by the Court to such withdrawal includes the power to compel an attorney to continue in the representation of a party when he complies with rules for withdrawing or gives due notice to his client of his intention to withdraw, unless unusual circumstances exist which would interfere with the orderly processes of the Court such as we shall discuss.
What are "unusual circumstances" which would justify a refusal to allow withdrawal?
The case cited by the trial judge, Fessler v. Weiss,[9] presented an example. In that case the Illinois Court held that after an *485 attorney enters an appearance in a case for a party, the later liquidation of the insurance company that employed him did not affect the attorney-client relationship and that "the fact he was being paid by a third party cannot be allowed to detract from that responsibility in any respect." We find no fault with that holding in the light of the facts in that case. There the attorney, on the eve of the trial, requested and was refused  because of such imminent trial  the right to withdraw. The Court said that at the time he applied to withdraw "the case was practically ready to be assigned for trial." Thereafter on each successive day the attorney was present at the call of the cases but on the day the case came on for trial, he was not present and a judgment was directed against his client.[10] These were the unusual circumstances which afforded a proper basis for the court's refusal to allow withdrawal. But, it is clearly pointed out in the decision that had the motion been timely made, the decision would have been otherwise. The Court said:
"An attorney who has entered an appearance of record for a client may not terminate that relationship without a formal withdrawal of record by leave of court. Jacobson v. Ashkinaze, 337 Ill. 141, 168 N.E. 647; Krieger v. Krieger, 221 Ill. 479, 77 N.E. 909. Here, the motion judge's refusal to allow Jacobs to withdraw was entirely justified. Had counsel acted earlier, his motion to withdraw might well have been allowed. However, at the time his motion was acted upon, the trial was only a few days off. He had answered ready to the trial call for approximately a month after the insolvency of the insurance company. The time between the refusal of his motion and the trial was so short that, by his own admission, he was unable to notify Weiss. After his motion for withdrawal was refused, counsel apparently recognized his duty toward Weiss by answering himself or having Warvel answer the trial call daily and by having Warvel appear for Weiss at the trial."
In Smith v. Bryant,[11] the Supreme Court of North Carolina observed:
"Whether an attorney is justified in withdrawing from a case will depend upon the particular circumstances, and no all-embracing rule can be formularized. It is generally held, however, `that the client's failure to pay or to secure the payment of proper fees upon reasonable demand will justify the attorney in refusing to proceed with the case.' * * * Nevertheless, this does not mean that an attorney of record can walk out of the case by announcing to the court on the day of the trial that he has withdrawn because he has not been paid. An attorney not only is an employee of his client but also is an officer of the court. This dual relation imposes a dual obligation. * * To the court, which cannot cope with the ever-increasing volume of litigation unless lawyers are as concerned as is a conscientious judge to utilize completely the time of the term, the lawyer owes the duty to perfect his withdrawal in time to prevent the necessity of a continuance of the case. * * *
"As between the attorney and his client the relationship may ordinarily be dissolved in good faith at any time, but before an attorney of record may be released from litigation he must satisfy the court that he is justified in withdrawing. The first requirement for his withdrawal is proof of timely notice to his client. Obviously, written notice served on the client would be the most satisfactory evidence of compliance with this requirement. G.S. § 1-592."
We approve this language; and we again emphasize that the court's power is predicated upon the necessity of effective and orderly administration of his court.
*486 In Fairchild v. G.M.A.C.,[12] the Mississippi Supreme Court held that an attorney should not be permitted to withdraw as attorney on the day of trial, withdraw the pleadings he had filed and allow a default judgment to be entered against his client and stated that such attorney could not withdraw without leave of court.
The client may discharge his attorney at any time with or without cause. It is said "The right is deemed necessary in view of the confidential nature of the relation between attorney and client and the evil that would be engendered by friction and distrust."[13] The same reasoning implies the conclusion that the same right (except under the "unusual circumstances" situations) must be accorded the lawyer under appropriate procedures to assure that the orderly procedures in the court will not be adversely affected.
This record shows that granting the motion of Petitioner to withdraw would not have interfered with the orderly functioning of the trial court, nor did the trial court find that it would. The case had not been scheduled for trial and there remained ample time for the clients to procure new counsel to handle the case. Under such circumstances, Petitioner had the absolute right to withdraw as counsel of record. The action of the Respondent in requiring the Petitioner to continue to represent the Van Alsts during and presumably through the trial and conceivably through all the appellate courts was clearly beyond his powers under the circumstances here.
On the other hand, we do not approve the precipitous manner in which the Petitioner reacted to the order of reinstatement.
Orderly  and proper  procedure would have been to again present the matter to the trial court for reconsideration and, if necessary, to endeavor to adjust any differences of opinion in a manner that would not have produced such an impasse as that reached here. So far as this record shows, the real parties in interest  the Van Alsts  were satisfied with the order of withdrawal. When the case was actually tried, they were represented by other counsel.
We hold that in a civil case any attorney of record has the right to terminate the attorney-client relationship and to withdraw as an attorney of record upon due notice to his client and approval by the court. Approval by the court should be rarely withheld and then only upon a determination that to grant said request would interfere with the efficient and proper functioning of the court. The approval of the court of such withdrawal will not relieve the attorney of any civil liability for breach of duty or negligence to his client nor from appropriate disciplinary procedures for such act, if it is wrongfully done.
The Petitioner, as an additional ground for relief here, asserts that the Order entered by the Respondent adjudging him guilty of a direct criminal contempt is necessarily void because it is based upon the Order of September 11, 1968 which was a void Order entered without authority.
Assuming for the sake of this decision that the Order of September 11, 1968 was a valid Order, it was entered, according to its recitals, for the purpose of compelling the Petitioner to continue his representation of the Van Alsts in the proceedings growing out of the automobile accident for it is stated in the Order that the discharge of Petitioner by the Receiver "does not alter said attorney's responsibilities to defendant Frank Van Alst and Franklin Van Alst because of the attorney-client relationship between them." In the Order of contempt it is recited that the Petitioner "is in criminal contempt * * * for his failure and refusal to appear at the trial of this cause at 9:30 a.m., February 11, 1970, and there represent the defendants in case no. 67-1225, Tharp vs. Van Alst pending in this court." It is, as we have stated, quite apparent from the disclosures of the record here that this *487 entire controversy revolved around the question of whether a member of the Bar, having once assumed the responsibility of representing a party in a civil action, was compelled to continue the representation of such party against his will. The court undoubtedly concluded that it was his responsibility to compel such representation and the obvious purpose of the use of contempt was not primarily to vindicate a wrong to the court itself but to compel the performance of an act for the benefit, primarily at least, of a party litigant. Contempt for failure to perform an act judicially commanded, even though the performance may be incidentally for the purpose of preserving the court's power and dignity, is usually referred to as civil contempt. It is to coerce the performance of the act in question. At best the line of demarcation between civil and criminal contempts in character is difficult to state with accuracy and in close cases rests in shadow.[14] It is not necessarily the fact of punishment that is controlling. It is the character and purpose of the punishment. If its character and purpose are to enforce the performance of a right primarily for the benefit of a litigant, it is usually characterized as civil in nature and governed by proceedings governing civil contempts rather than criminal contempts. As has so often been stated by the courts, and we think appropriate to repeat here, the performance of the act by the party directed to do so in these cases discharges him from punishment because the object of the order has been accomplished and the power of the court has been vindicated. The contemnor carries the key to the jail in his pocket.
In the proceedings in this case the trial court was, we think, under the erroneous impression that he was dealing with a situation which constituted a criminal contempt and that the proceedings were, therefore, governed by the provisions of the Rules of Criminal Procedure, Rule 1.830, 33 F.S.A. As revealed by the judgment of contempt, the Petitioner was called before the court, the trial was summary in nature and the judgment pronounced at the conclusion of the hearing without the intervention of a jury trial or the other requirements of the Rules of Criminal Procedure, Rule 1.840, relating to indirect criminal contempt.
Rule 1.830, supra, specifically defines a criminal contempt as a contempt "saw or heard" by the court. The purpose of such rule is to clothe the trial court with full and complete power to enforce all rules of procedure and the conduct of all parties in the trial of the cases or hearings before him, whether in chambers or before a jury. It is an essential power and one necessary to the orderly functioning of the courts and the fair and efficient administration of justice. The nature of the summary procedures are to enable the court to enforce its orders promptly and with dispatch. It is designed to prevent, without attempting to cover every possible act, such acts as drunkenness in the courtroom, the use of profanity, disrespect to opposing counsel or the court or the court officials or any other act of a similar nature seen or heard by the court. We think, and hold, that assuming the Order of September 11, 1968 to have been valid, the refusal to obey that Order falls more nearly in the category of civil contempt than criminal contempt. Under the rule and decisions it could not properly be characterized as a direct criminal contempt. This is particularly pertinent as to the enforcement of the sentence imposed because at the time of the imposition of sentence, as shown by the Judgment, the Van Alsts had procured other counsel.
We have heretofore discussed the great difficulty in drawing a line between *488 criminal contempts and civil contempts. We think that, because of the summary nature of the procedures in direct criminal contempts, any doubt as to the category in which the act falls should be resolved in favor of the contemnor.
The questioned judgment is reversed in #39,545 and the Petitioner is discharged from custody in #39,528.
It is so ordered.
ROBERTS, C.J., CARLTON, ADKINS and BOYD, JJ., and SMITH, Circuit Judge, concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
I am unable to agree to the reasoning employed by the majority in taking jurisdiction of this case and reversing the circuit judge.
Ordinarily it would appear this case is beyond our jurisdictional domain, and especially in view of prior decisions in this matter where appellate intervention was declined. See Fisher v. McLane, Fla., 218 So.2d 441, and Fisher v. McLane, Fla. App., D.C.A. 1st, 224 So.2d 733, and our denial of certiorari in Fisher v. McLane, 232 So.2d 177, on October 13, 1969. Inspection of the present litigation (civil appeal and habeas corpus) reveals nothing in the contempt order of the circuit judge here under review either construing a constitutional provision or otherwise generating our review jurisdiction. However, I am not personally disturbed by this acceptance for review, especially after the innovative decision in Gibson v. Maloney, Fla., 231 So.2d 823, since it appears therefrom that as the state's Supreme Court we are now studying transcript evidence, and granting second appeals  trying to do justice in those cases we feel call for it regardless of technical niceties of jurisdiction.
However, I am of the opinion that taking jurisdiction here, although dubious it may appear to be to jurisdictional traditionalists, does not lead to "justice" on the merits in this case.
Appellant-Petitioner had contracted with the automobile liability insurer to defend the Van Alsts, the insureds, in the litigation brought by the injured third party. So far as the insureds were concerned, they had done all that was expected of them under prevailing insurance practices in the matter of engaging an attorney to defend them. Pursuant to his contract, Appellant-Petitioner became attorney of record for the Van Alsts, had prepared for their defense up to the point where the case was ready to be assigned for trial. The contract for their representation was complete and the matter settled that Appellant-Petitioner would defend the Van Alsts to conclusion of the case.
Because  and primarily because  of the insolvency of the insurer, Appellant-Petitioner decided to withdraw as counsel for the Van Alsts. He submitted to the trial judge the question of the propriety of his decision to withdraw. The trial judge, as "captain of the ship," supervising the litigation, after a hearing and review of the facts and circumstances, ultimately concluded Appellant-Petitioner should continue the defense and represent the Van Alsts at trial.
In my opinion, Appellant-Petitioner by his subsequent actions arbitrarily refused to accede to this value judgment of the trial judge and flouted his decision. After he lost in his efforts to overturn the trial judge's decision, here and in the District Court (see citations above), he continued to refuse representation and the contempt order ensued, followed by the instant review. Incidentally, it seems logical the trial judge must have concluded from our rejection of the prior review efforts he was within his authority to enter a contempt order.
*489 An attorney defending an insured pursuant to contract with an auto liability insurer, against a suit of an injured third party beneficiary, is well aware of the nature of his undertaking. See In re Rules Governing Conduct of Attorneys in Florida, Fla., 220 So.2d 6. There, we said:
"We do not hold that a third party may not ethically pay the cost of legal services to be rendered by a lawyer to a particular client. We do hold that in such a situation the lawyer owes undivided loyalty to the client whom he purports to serve, not to a third party source of his compensation." (220 So.2d, p. 8.)
We also there said:
"They [counsel for insureds] should all be held to the highest degree of loyalty and devotion to the causes of the clients whom they agree to serve. Anything short of that is a breach of trust." (220 So.2d, p. 9.)
When the insureds purchased their auto liability insurance policy they thereby received assurance they would have counsel assigned them by insurer to defend against third party beneficiary suits. This the Appellant-Petitioner unquestionably knew when he accepted their representation. He knew the Van Alsts' contract with the insurer for representation by assigned counsel was complete; that they had paid premium consideration for it and had a right to rely on his agreed representation of them.
It seems to me the trial judge's reliance on the Illinois case of Fessler v. Weiss, 348 Ill. App. 21, 107 N.E.2d 795, was not necessarily misplaced and that by intervening we are going far beyond any demonstrated need in holding that under the particular circumstances the trial judge abused his discretion. Only under the most compelling circumstances of hardship in view of the duty and loyalty (which we have acclaimed) counsel owed his clients, should he be allowed to withdraw in a case of this nature. From the beginning, Appellant-Petitioner took the position the insolvency of insurer ipso facto authorized him to withdraw. See his letter quoted from in the majority opinion to this effect. He makes no showing of any substantial economic hardship  or anything else appealing to the judicial conscience that strongly suggests he would be materially disadvantaged if he continued the Van Alsts' defense at trial.
Reference by the majority to Rule 1.840 and some indication a jury trial on the contempt was necessary is inapposite. The contempt order reviewed was entered on March 2, 1970 long after the requirement for jury trial for criminal contempt was deleted from the rule. See Dade County Classroom Teachers' Association v. Rubin, Fla., 217 So.2d 293, footnote p. 296.
I think we should refrain from intruding our value judgment in lieu of that of the trial judge in this matter. Matters of this kind are best left to the trial judge's sound discretion  and especially so when our jurisdiction to intrude is so tenuous.
NOTES
[1] At this period of time the case had not been set for trial. Apparently the action had remained dormant since the first letter from Mr. Fisher to the Van Alsts advising them of the possibility of the company's insolvency.
[2] We shall discuss this case later in this opinion. At this point it should be noted that in that case, at the time the motion to withdraw was made "* * * the case was practically ready to be assigned for trial." This fact, as we shall later discuss, clearly distinguishes these two cases.
[3] Canon 6, Professional Ethics 1968.
[4] Canon 15, Professional Ethics 1968.
[5] Whether the right to withdraw in criminal cases should be governed by more rigid requirements is not decided in this case. The fact that the public interest and welfare is involved in such cases may well afford a legitimate basis for broadening the "unusual circumstances" requirement in civil cases.
[6] F.A.R. 2.3(d) (2), 32 F.S.A.
[7] R.C.P. 1.030, 30 F.S.A.
[8] P.G.R. 5.040.
[9] 348 Ill. App. 21, 107 N.E.2d 795.
[10] This judgment was vacated by the Court.
[11] 264 N.C. 208, 141 S.E.2d 303, 305.
[12] 254 Miss. 261, 179 So.2d 185.
[13] 7 Am.Jur.2d, 132.
[14] See N.L.M. Contempt (Dangel), p. 86a, para. 192. Root v. MacDonald, 260 Mass. 344, at 388, 157 N.E. 684; Cherry v. Cherry, 253 Mass. 172, 148 N.E. 570; In re Merchant's Stock & Grain Co., Petr., 223 U.S. 639 at 641, 32 S.Ct. 339, 56 L.Ed. 584 and Gompers v. Buck's Stove & Range Co., 221 U.S. 418, at 444, 31 S.Ct. 492, 55 L.Ed. 797.