150 N.J. Super. 474 (1977)
375 A.2d 1253
MARY-ANN KRIEGSMAN, PLAINTIFF-RESPONDENT,
v.
BERNARD KRIEGSMAN, DEFENDANT, AND ROSE, POLEY, BROMLEY & LANDERS, PETITIONERS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 17, 1977.
Decided June 9, 1977.
*477 Before Judges LORA, CRANE and MICHELS.
Messrs. Rose, Poley, Bromley & Landers, appellants pro se (Mr. Frank T. Koserowski, of counsel and on the brief).
No one appeared on behalf of respondent.
The opinion of the court was delivered by MICHELS, J.A.D.
Appellants Messrs. Rose, Poley, Bromley and Landers (hereinafter "the Rose firm") appeal from an order of the Chancery Division denying their application to be relieved as attorneys for plaintiff Mary-Ann Kriegsman in this matrimonial action.
On December 22, 1975 plaintiff, who had been previously represented by other counsel, retained the Rose firm to represent her in a divorce action against her husband, defendant Bernard Kriegsman. The Rose firm requested and received consent to substitution of attorneys from plaintiff's former attorney. Plaintiff then paid an initial retainer of $1,000, plus $60 in court costs, with the understanding that she would be responsible for additional fees and expenses as litigation progressed. In March 1976 plaintiff paid the Rose firm another $1,000, plus $44 which was to be applied against costs.
During the 3 1/2 months that the Rose firm represented plaintiff prior to its motion the firm had made numerous court appearances and had engaged in extensive office work in plaintiff's behalf. The unusual amount of work required was necessitated in part by the fact that defendant appeared *478 pro se, was completely uncooperative and had refused to comply with some of the orders entered by the court. As of April 5, 1976 the Rose firm alleged that it had spent 110 hours on plaintiff's case, billed at $7,354.50, and had incurred disbursements of approximately $242. Since, by then, plaintiff was on welfare and since she apparently did not have sufficient funds to pay the additional fees incurred, the Rose firm contended that they were entitled to be relieved from further representation. Plaintiff opposed the application before the court, pointing out
First of all, this case, I think, has accumulated a file this thick. I think at this point, for another attorney to step in, it would be very difficult to acquaint himself with every motion that has been brought up before this court. I feel that Mr. Koserowski [an associate in the Rose firm] has been with me, representing me, for four months, and when this case finally does go to trial, hopefully soon, he has all this knowledge at his fingertips. Whereas another attorney would have to, I don't know how they can, wade through all of this, and really become acquainted with it. That's the first thing. Secondly, when I first went to this law firm, I spoke to Mr. Rose, and he knew exactly my circumstances. He knew that there were very few assets in the marriage. He knew that I would have to borrow money from relatives to pay the thousand dollar retainer fee that they asked for. They knew that my husband was going to represent himself, which would be a difficult situation. They also knew that he had done certain bizarre things, such as sending letters to people, and doing strange things; so, therefore, we might expect a difficult case from him. Yet, they consented to take my case. Of course, I don't think any attorney can guess, when he consents to represent somebody, what might occur. I imagine some cases go to trial immediately, things get resolved, and my case is probably the other extreme, where everything possible has happened. I think it's unfortunate, and I think they've done a very fine job of representing me. I feel they should continue.
Judge Cariddi in the Chancery Division agreed with plaintiff and denied the application of the Rose firm, but set the case down for trial within the month. The Rose firm appealed.
Preliminarily, we point out that the order from which the appeal was taken was interlocutory, not a final judgment, and was not appealable as a matter of right pursuant to R. *479 2:2-3(a). Jacobs v. Pendel, 98 N.J. Super. 252, 254 (App. Div. 1967). Therefore, application should have been made to this court for leave to appeal. See R. 2:2-3(b) and R. 2:2-4. However, we are satisfied that in the interests of justice and in order to promptly resolve the matter so that the action may proceed to trial, this appeal should be heard. Therefore, we grant the Rose firm leave to appeal nunc pro tunc and consider the merits of the appeal.
When a firm accepts a retainer to conduct a legal proceeding, it impliedly agrees to prosecute the matter to a conclusion. The firm is not at liberty to abandon the case without justifiable or reasonable cause, or the consent of its client. 7 Am. Jur.2d, Attorneys at Law, § 143 at 134 (1963); 7 C.J.S., Attorney and Client, § 110 at 943-945 (1937). We are firmly convinced that the Rose firm did not have cause to abandon plaintiff's case, and that the trial judge properly exercised his discretion when he denied the firm's application and scheduled an early trial date. See R. 1:11-2; Jacobs v. Pendel, supra, 98 N.J. Super. at 255. It was to plaintiff's and the firm's advantage that the matter be heard and disposed of as expeditiously as possible. With trial imminent, it would be extremely difficult for plaintiff to obtain other representation, and therefore she clearly would be prejudiced by the Rose firm's withdrawal. See D.R. 2-110(A) (2); Finch v. Wallberg Dredging Co., 76 Idaho 246, 281 P.2d 136, 138 (Sup. Ct. 1955); Bergman v. Hedges, 111 Ill. App.2d 35, 249 N.E.2d 666, 668 (App. Ct. 1969); Fessler v. Weiss, 348 Ill. App. 21, 107 N.E.2d 795, 798 (App. Ct. 1952); Carter v. Carter, 188 Misc. 156, 66 N.Y.S. 2d 768, 770 (City Ct. 1946); Phoenix Mut. Life Ins. Co. v. Radcliffe on the Del., Inc., 439 Pa. 159, 266 A.2d 698, 700 (Sup. Ct. 1970); Cotrone v. Bryan Production Credit Ass'n, 502 S.W.2d 954, 956 (Tex. Civ. App. 1973), writ of error refused, no reversible error.
Since the Rose firm undertook to represent plaintiff and demanded and was paid a retainer of $2,000, they should *480 continue to represent plaintiff through the completion of trial. The firm should not be relieved at this stage of the litigation merely because plaintiff is unable to pay to them all of the fees they have demanded. See Drinker, Legal Ethics, 140, n. 4 (1953). We are not unmindful of the fact that the Rose firm has performed substantial legal services for plaintiff and clearly is entitled to reasonable compensation therefor. Nevertheless, an attorney has certain obligations and duties to a client once representation is undertaken. These obligations do not evaporate because the case becomes more complicated or the work more arduous or the retainer not as profitable as first contemplated or imagined. Cf. Suffolk Roadways, Inc. v. Minuse, 56 Misc. 2d 6, 287 N.Y.S.2d 965, 969-970 (Sup. Ct. 1968). Attorneys must never lose sight of the fact that "the profession is a branch of the administration of justice and not a mere money-getting trade." Canons of Professional Ethics, No. 12. As Canon 44 of the Canons of Professional Ethics so appropriately states: "The lawyer should not throw up the unfinished task to the detriment of his client except for reasons of honor or self-respect." Adherence to these strictures in no way violates the constitutional rights of the members of the firm. State v. Rush, 46 N.J. 399, 407-409 (1966).
Affirmed.