RICHARD W. CARDOT, *et al.*

*v.*

THE HONORABLE EDWARD T. LUFF,

*Judge, etc.*

(No. 14705)

Decided February 19, 1980.

*Richard W. Cardot* pro se.

No appearance for respondent.

MILLER, JUSTICE:

In this original prohibition proceeding, we are asked to prohibit the respondent judge from refusing the motion by relators to be relieved as counsel for certain defendants in two civil actions pending in the Circuit Court of Barbour County.[1]

---

[1] The parties defendant represented by relators in these two underlying actions are identified as two individuals, Joseph W. Nelson and Ludwell E. O'Quinn, and the following corporations: Joseph W. Nelson, Inc.; Auger, Inc.; and 8 Brothers Mining, Inc. The exact relationship of the parties defendant, *inter se*, and their involvement in the events which gave rise to this litigation is not clear from the pleadings.

An affidavit with attached exhibits filed with the petition reveals that relators were retained on an hourly fee basis on July 15, 1977. It appears that at the time they were retained, the two civil actions had already been initiated. Relators received an advance of $5,000, of which $1,500 was expended for accounting and investigating services, and the remaining $3,500 was retained by relators.

The relators' affidavit further indicates that in October of 1977, one of their clients, Joseph W. Nelson, reached a tentative compromise agreement with the plaintiffs. It is not clear whether any of the other named defendants obtained the benefit of the agreement. On October 26, 1977, relators submitted an additional bill to Mr. Nelson. Sometime after this date, Mr. Nelson left this State and, according to relators, refused to respond to all calls and letters in regard to the pending litigation and payment of the additional fee.[2]

A deposition of the defendant Nelson was scheduled by the opposing parties for April 18, 1978. In a letter dated April 11, 1978, one of the relators advised Nelson of the deposition and suggested that Nelson might wish to engage other counsel, since he would withdraw as counsel following the deposition "for the simple reason that you will not pay me." Mr. Nelson failed to appear for the deposition. A transcript was taken of the statements made by the several counsel who appeared for Nelson's deposition. After stating in the deposition transcript that they had written to Nelson advising him to attend, relators indicated that they intended to file a motion to withdraw as counsel.

By letter of June 2, 1978, relators sent opposing counsel a motion and proposed order permitting relators' withdrawal from the case. It does not appear that relators ever sent a copy of this withdrawal motion to their

---

[2] Relators attach copies of two letters, dated January 25 and February 24, 1978, sent to Mr. Nelson at an address in Belington, West Virginia. Subsequent correspondence was sent to Mr. Nelson at an address in Plantation, Florida.

clients. Opposing counsel refused to sign the withdrawal order. Consequently, on July 6, 1978, relators filed a formal notice of their withdrawal motion with the Circuit Court, and the matter was set for hearing before the respondent judge on September 5, 1978. The record is silent as to whether relators advised their clients of this action. Apparently the withdrawal issue was submitted to the court on this date for consideration.

Relators' exhibits indicate that on September 19, 1978, two letters were sent by them, one to Mr. Nelson at an address in Miami, Florida, and the other to his wife at the address in Plantation, Florida. The letter to Mr. Nelson was by certified mail and was returned, stamped "No such [street] Number." Relators made no assertion that the letter to Mrs. Nelson was returned to them. Both letters contained essentially the same statements, urging that relators be contacted concerning the two pending suits. No statement concerning relators' motion to withdraw was contained in these letters.

On November 7, 1978, relators sent a letter to the respondent judge, enclosing a memorandum of authorities in support of their motion to withdraw and advising that they had received notification of pretrial conference, but would not be able to attend because of their withdrawal.

The pretrial conference order, dated June 28, 1979, reflects the fact that relators did not appear at the pretrial conference and, with little discussion, overruled their motion to withdraw. The court did state:

"It also appears that said counsel [the relators] failed to appear for trial on June 25, 1979 at which time one of their clients Ludwell E. O'Quinn appeared. The trial of this case was then continued to July 11, 1979."

On August 29, 1979, relators moved by written motion to have one of the actions dismissed because of the compromise settlement signed by Mr. Nelson in October of 1977. The motion stated that "[d]efendants have not pre-

sented this Release to the Court previously because they were informed by counsel for plaintiff that he would do so." The motion was overruled by a letter memorandum of the court on November 2, 1979. By notice dated November 8, 1979, the court set the case for trial on November 26, 1979.

On November 12, 1979, relators wrote Mr. Nelson and another of the clients, Mr. Ludwell E. O'Quinn, outlining the posture of the case and the court's refusal to permit them to withdraw, as well as the reasons for their decision to withdraw. The letter also urged the two clients to contact them concerning the pending litigation.

Relators then sought relief by filing this writ of prohibition on November 19, 1979.

The question of the right of an attorney to withdraw from representation of his client in a civil action has not been extensively discussed by this Court. Relators rely heavily on the following statement from *Matheny v. Farley*, 66 W.Va. 680, 684, 66 S.E. 1060, 1061 (1910):

"No general rule can be laid down by which it can, in all cases, be determined what cause will be sufficient to justify an attorney in abandoning a case in which he has been retained. But if the client refuses to advance money to pay the expenses of the litigation, or if he unreasonably refuses to advance money, during the progress of a long litigation, to his attorney to apply upon his compensation, sufficient cause may be furnished to justify the attorney in withdrawing from the further service of the client."[3]

We do not disagree that an attorney in a civil case can for good cause terminate the attorney-client relationship. *Cascella v. Jay James Camera Shop*, 147 Conn. 337, 160 A.2d 899 (1960); *Harms v. Simkin*, 332 S.W.2d 930

---

[3] *Matheny v. Farley*, 66 W.Va. 680, 66 S.E. 1060 (1910), indicates this is not the only ground justifying an attorney's termination of his services to his client. Since refusal to pay fees is a principal ground relied on by relators, we need not cover the other grounds for good cause termination.

(Mo. App. 1959); *Kriegsman v. Kriegsman,* 150 N.J. Super. 474, 375 A.2d 1253 (1977); *McKelvey v. Oltmann,* 16 A.D.2d 957, 229 N.Y.S.2d 814 (1962); *Smith v. Bryant,* 264 N.C. 208, 141 S.E.2d 303 (1965); *Farkas v. Sadler,* 375 A.2d 960 (R.I. 1977); 7 Am. Jur. 2d *Attorneys at Law* § 143 (1963). This basic principle, however, does not resolve the questions in the case before us.

Most courts require that before an attorney can unilaterally sever the attorney-client relationship, he must give reasonable notice to his client of his intention to withdraw.[4] *Cascella v. Jay James Camera Shop, supra; Kirsch v. Duryea,* 21 Cal.3d 303, 578 P.2d 935, 146 Cal. Rptr. 218 (1978); *Fisher v. State,* 248 So.2d 479 (Fla. 1971); *Stafford v. Dickinson,* 46 Hawaii 52, 374 P.2d 665 (1962); *Bergman v. Hedges,* 111 Ill. App. 2d 35, 249 N.E.2d 666 (1969); *People v. Bruinsma,* 34 Mich. App. 167, 191 N.W.2d 108 (1971); *Fairchild v. General Motors Acceptance Corp.,* 254 Miss. 261, 179 So.2d 185 (1965); 7 Am. Jur. 2d *Attorneys at Law* § 145 (1963).

If the withdrawal involves a matter pending in court, there is the further requirement that the attorney secure court permission for his withdrawal. *Cascella v. Jay James Camera Shop, supra; Fisher v. State,* 248 So.2d 479 (Fla. 1971); *Fairchild v. General Motors Acceptance Corp., supra; Farkas v. Sadler,* 375 A.2d 960 (R.I. 1977). The reason for this requirement is that an attorney not only represents his client, but is also an officer of the court. In this latter position, there is a public concern that his withdrawal not disrupt the orderly workings of the court system. This aspect received comment in *Smith v. Bryant,* 264 N.C. 208, 211, 141 S.E.2d 303, 306 (1965):

---

[4] This requirement is consistent with the Code of Professional Responsibility, DR 2-110(A)(2), 1 Michie, W. Va. Code at 598:

"In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

> "To the court, which cannot cope with the ever-increasing volume of litigation unless lawyers are as concerned as is a conscientious judge to utilize completely the time of the term, the lawyer owes the duty to perfect his withdrawal in time to prevent the necessity of a continuance of the case. . . ."

We would emphasize, as did the Florida court in *Fisher v. State, supra,* that in a civil action[5] the court should not be reluctant to permit counsel to withdraw where good cause is shown, timely notice has been given the client, and the withdrawal will not interfere with the efficient functioning of the court. Furthermore, withdrawal does not insulate an attorney from any liability he may have incurred during the course of his retention. *Fisher,* 248 So.2d at 486, stated:

> "Approval by the court should be rarely withheld and then only upon a determination that to grant said request would interfere with the efficient and proper functioning of the court. The approval of the court of such withdrawal will not relieve the attorney of any civil liability for breach of duty or negligence to his client nor from appropriate disciplinary procedures for such act, if it is wrongfully done."

In the present case, relators have demonstrated sufficient good cause to withdraw by reason of their clients' failure to cooperate with them and their refusal to advance requested fees. Relators have failed to demon-

---

[5] We have applied a different rule where the attorney is involved in a court-appointed criminal case. In this situation, we have precluded the client from the absolute right of discharging the attorney, which is the general rule. *Young v. Young,* ___ W.Va. ___, 212 S.E.2d 310, 314 (1975); *Gilbert v. Walbeck,* 339 S.W.2d 450 (Ky. 1960); *Baker v. Zikas,* 176 Neb. 290, 125 N.W.2d 715 (1964); *Farkas v. Sadler,* 375 A.2d 960 (R.I. 1977); 7 Am. Jur. 2d *Attorneys at Law* § 138. *Watson v. Black,* ___ W.Va. ___, 239 S.E.2d 664 (1977), sets out the circumstances which justify a severance of the relationship at the trial court level by the attorney and an indigent client. In *Turner v. Haynes,* ___ W.Va. ___, 245 S.E.2d 629 (1978), we discussed the obligation of court-appointed counsel on a criminal appeal.

strate, however, that they had unequivocally notified their clients of their decision to withdraw and that they gave them reasonable notice of the date and hour that they intended to apply to the court for a withdrawal order.

It is clear from the record before us that relators' clients were not notified that a formal motion for withdrawal would be heard at a given date and hour before the circuit judge. Relators' correspondence with their clients regarding the withdrawal is ambiguous at best, and lacks a clear and definite statement that relators were terminating the relationship and would move the court for a withdrawal order at a definite date and hour.

A final procedural comment may be in order as to when a writ of prohibition is appropriate for this issue. In *State ex rel. Partain v. Oakley*, ___ W.Va. ___, 227 S.E.2d 314 (1976), we accepted a prohibition proceeding where an attorney challenged the validity of an order appointing him to represent an indigent defendant.

Other courts have permitted the issue of whether the trial court exceeded its legitimate authority in denying counsel's motion to withdraw to be determined by prohibition. *See, e.g., O'Bryan v. Leibson*, 446 S.W.2d 643 (Ky. 1969); *State ex rel. National Union Ins. Co. v. District Court*, 151 Mont. 238, 441 P.2d 305 (1968). Some courts, without much discussion of the procedural question, have permitted an appeal from an order denying withdrawal. *Kreigsman v. Kreigsman*, 150 N.J. Super. 474, 375 A.2d 1253 (1977); *Brothers v. Burt*, 27 N.Y. 2d 905, 265 N.E.2d 922, 317 N.Y.S.2d 626 (1970). In *Brown v. Pennsylvania Railroad*, 435 Pa. 84, 87, 255 A.2d 554, 555 (1969), the court made this rather terse statement in Note 1:

> "The order dismissing appellant's petitions and rules is appealable. We so treated the order denying leave to withdraw as counsel in Swedloff v. Phila. Trans. Co., 409 Pa. 382, 187 A.2d 152 (1963), although the issue was neither raised nor discussed there. Even though the often-used ratio-

nale for appealability that appellant has been put 'out-of-court' is particularly inapt in the instant situation where appellant has actually been forced into court, it is apparent that as to him, the order is an absolute denial of the relief sought, and could never be raised at any other time if it were not appealable now."

Despite the lack of a developed and fully articulated procedural rationale, it is clear that the final settlement of the withdrawal issue is paramount to the subsequent orderly development of the case, and this issue thus meets the standards set out in the first syllabus of *Hinkle v. Black,* ___ W.Va. ___, ___ S.E.2d ___ (1979) (No. 14617):

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the overall economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

Because the relators did not give their clients adequate notice of their decision to withdraw from representation and did not notify them of the date and hour of the hearing on the withdrawal motion, the trial court did not exceed its jurisdiction in refusing their motion to withdraw. Today's finding does not preclude relators, on further proper notice, from renewing the motion to withdraw as counsel.

The writ of prohibition is, therefore, denied.

*Writ denied.*