**RUSSELL B. JOHNSON, Plaintiff**

**v.**

**FAITH DANE JOHNSON, Defendant**

Civil No. 270/1968

District Court of the Virgin Islands

Div. of St. Croix

December 27, 1977

---

JEFFREY L. RESNICK, ESQ. (JAMES & RESNICK), Christiansted, St. Croix, V.I., *for plaintiff*

FRANK PADILLA, ESQ., Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

### MEMORANDUM OPINION AND ORDER

No purpose would be served in the case sub judice by outlining with particularity a diary of the events which make up the course of the tortuous, winding and hazardous path from marriage through divorce covering the past ten years, more or less. Suffice it to say that the latest steps pertinent to this opinion included my disposition of a series of motions heard on November 2, 1977, as the District Court sitting by designation. All of these motions were the subject matter of a series of formal orders entered by this Court on November 3, 1977, which left for disposition only

issues arising out of an alleged contempt of court by plaintiff for failure to comply with the previous court orders, a determination of the balance of alimony due, if any, and approval or disapproval of an attorney's fee claimed by defendant's attorney for services rendered to his client, the propriety of which defendant challenges.

Amongst the issues decided was the refusal of this Court to allow Attorney Padilla to withdraw as counsel for the defendant as to any of the issues disposed of with finality on November 3, 1977,[1] and its requirement that he remain present in court and at counsel table to assist defendant in her presentation of her position on a pro se basis. This arrangement was with the concurrence of the defendant who thereafter fully participated in the argument of all matters as did her counsel, in a hearing which lasted only a few minutes short of four hours.

The matter presented for disposition today arises out of the entry of an order on November 3, 1977, which provided in pertinent part, "The question of the reasonableness of the attorney's fees is reserved to be determined at a plenary hearing on the 18th day of November, 1977, at 2:00 p.m."

At the appointed time and place, defendant failed to appear but, instead, sent as her representative an individual who, although not a member of the bar, was given an opportunity to address the Court on behalf of defendant. The substance of his comments was a request for continuance, ostensibly because defendant had suffered a near drowning a week earlier and had gone to the hospital.

Because the writer had seen this defendant on the street a relatively short time before the date of this hearing, some doubt entered his mind as to her hospitalization, and a telephone call was made to the Charles Harwood Me-

---

[1] This order was announced orally from the bench at the conclusion of the hearing on November 2, 1977.

470

morial Hospital where it was ascertained that, although the defendant had presented herself for the purpose of attempting to make an appointment with Dr. Hendricks at the Mental Health Clinic during the morning hours, she had voluntarily departed the premises, had never been treated, had never been admitted, and, in fact, had had no direct contact with the hospital for at least a period which reached back to a point prior to her "near drowning." When this information was called to the attention of defendant's representative, he changed his position entirely, and sought the continuance on other grounds.

This Court, at that point, recalled to mind some language which appeared to it to be particularly applicable to the matter which was then unfolding before it. In an opinion in Martinez-McBean v. A.F.T. and A.F.L.–C.I.O., D.C.V.I, St. Croix, Civil No. 912/1974, filed on June 24, 1976, by the Honorable Warren H. Young, the Court said:

This Court is as mindful as the next that the legal work of pro se petitioners should be liberally construed. And I have hitherto been patient with and gone to great lengths not to discourage the jurisprudential efforts of parties who seek to redress their real or imagined grievances without the benefit of counsel's assistance. For not only do private persons have a constitutional and statutory right to represent themselves (28 U.S.C. 1654, Hutter Northern Trust v. Door County Chamber of Commerce, 467 F.2d 1075 (7th Cir. 1972), and Faretta v. California, 422 U.S. 806 (1975)), but frequently counsel may be unavailable, particularly in a small community where close-knit ties between members of the local Bar Association are sufficiently strong to overwhelm the profit motive.

Nevertheless, there is an ill-defined limit beyond which this Court cannot be pushed. And while that line of demarcation may be difficult to delineate, this Court "knows it when it sees it." That line, it must be emphasized, has long been crossed in the matter sub judice. Were this litigation to involve anyone other than the present pro se petitioner par excellence I would merely issue an Order summarily disposing of the four motions which have been presented to me for decision.

The language above was recited at length for its application herein, and for the edification of all those who may similarly attempt to tax the patience of this Court or any other arm of the judiciary.

As did Judge Young in that case, I, too, apparently,

resolved the Scylla and Charybdis dilemma—insuring that form did not dominate substance and that each and every litigant had his day in court vs. seeking to discourage frivolous and unfounded claims which can only serve to further clog an already over-worked judicial machinery—incorrectly or inequitably in (t)his instance. It is for that reason that I reach herein arguments which, strictly speaking, should be res judicata . . .

Martinez-McBean v. A.F.T. and A.F.L.–C.I.O., supra, at fn. 1.

It is for this reason that I granted the continuance upon the express conditions which I now quote verbatim from a partial transcript of my remarks from the bench:

Taking those facts into consideration, I am going to give Mrs. Johnson until December 2. I would not give her that long excepting that November 25 happens to be the day after Thanksgiving and I feel that it is an unfair period to attempt to get any work done, so I am going to give her until December 2 which is a full two weeks again, during which time she will respond in writing or under oath, any motion she cares to submit which is directed solely to the issue of reasonableness or unreasonableness of your request for $800 in counsel fees. In order that there be no misunderstanding of the limitations of what I am directing, I am going to ask the Court Reporter to transcribe only that particular portion of my comments. If I have not received from Mrs. Johnson by December 2 such a pleading under oath, I will simply proceed to decide the motion on the pleadings before me.[2]

Nothing was received by way of pleadings from defendant until December 2, at which time a paper writing (and

---

[2] To insure that defendant would be fully aware of this limited continuance, I had a copy of the quoted partial transcript mailed to defendant at the address given by her representative for her, and it is clear that she received it.

I know of no other way to describe it) entitled, "Response to Excerpt of November 18 Hearing (transcript)" was filed with the Court, and thereafter, on December 6, three supplemental pages to that paper writing were likewise filed with the Court. Notwithstanding the express limitation contained in my oral order from the bench on November 18, limiting the pleadings to be filed to those "which (are) directed solely to the issue of reasonableness or unreasonableness of your request for $800 in counsel fees," defendant saw fit to file a five-page diatribe, which I have described above, and which, pursuant to Rule 12(f) F.R. C.P., I would, on my own motion, ordinarily strike as being redundant, immaterial, impertinent and scandalous. The nature, however, of the allegations which are contained in this vicious commentary are such that I feel some direct response is more appropriate than striking the same, and I shall, therefore, exercise my discretion, not strike the allegations, but respond to them to the extent deemed necessary and appropriate.

Defendant, in her "pleading," asserts among other things a list of charges which seem to be directed against each and every individual who has, in any way, remotely been connected with any litigation in which she has been involved over the past ten years. These assertions include, but are not limited to, allegations that her attorney, Mr. Padilla, in some way did less than was proper to obtain the recusal of Judge Joseph, and that Judge Joseph should have, in fact, recused himself by reason of some alleged impropriety on his part.

An examination of the file, however, discloses that of the orders entered by Judge Joseph, commencing in May 1977, at which time defendant voluntarily terminated the employment of her former counsel, each and every order was either entered with the consent of the defendant, or for the sole purpose of placing in safekeeping funds which had

not been adjudicated as due to her but which were susceptible to the possibility of such adjudication.

◼ Likewise, her allegations of conspiracy amongst marshals, attorneys and judges, coupled with her assertion that she has presently filed with the Virgin Islands Bar Association Grievance Committee, or some court, claims against 15 of such parties (including stateside attorneys), indicates the nebulous nature of these claims and dictates that little, if any, consideration be given them by this Court.[3]

I am supported in this conclusion by the fact that the writer made the pertinent decisions at the November 2 hearing in all matters as to which claims of impropriety addressed to Judge Joseph might have been made, and, therefore, not only was there a lack of statutory basis for the recusal of Judge Joseph, but, in fact, a lack of any action on his part or, to put it more succinctly, nothing from which he could recuse himself.

◼ A further examination of defendant's indictment of the handling of her case discloses that defendant is not above seeking unfair advantage for herself, although she most certainly objects to such advantage being granted to anyone else. Specifically, her urging that the matter be tried before Judge Finch evidences a clear, unequivocal case of forum-shopping on her part. Despite this, I am willing to overlook the implications of such forum-shopping because I believe that defendant may have, in her own mind, considered this to be an appropriate approach.

◼ Further assertions of mistreatment are described by defendant in the area of adjudication of her various

---

[3] This Court has simply ignored the defendant's claims of conspiracy against her in various eviction suits, and a narcotics charge, as well as assertions of interference or collusion of third parties with witnesses in those. actions because of the clear irrelevancy of such matter to the issues presented.

claims of an interest in real estate, both within and without the Virgin Islands, all of which have been previously adjudicated on more than one occasion, are res judicata, and do not constitute justiciable issues to which this Court should address itself.

I would be remiss, I believe, in failing to point out the viciousness of defendant's attack upon her own attorney who, insofar as this Court can ascertain, has done a commendable job in representing the interests of the defendant under extremely difficult circumstances, for the most part created by defendant's own inflexible, incomprehensible and illogical insistence upon "doing it my way." To reach this conclusion, I need only quote the following language from her "pleading,"

3. This was the salient point which I pleaded that Mr. Padilla present to you (sic) Honor in court on Nov. 2nd, when Mr. Padilla commenced to clench his fists and scream at me and when you proceededd (sic) to signal the court marshall (sic).

No such thing ever occurred. On the contrary, what did occur was the defendant's insistence upon continuing to argue with the court after having been expressly directed to cease, her attorney's attempt to reason with her, her disregard of both the court and her attorney, and the court's ultimate decision to have the marshal take such steps as the court deemed necessary to bring to an end a situation bordering on the contemptuous. These are but some of the classic examples of the applicability to defendant of that old adage, "He who represents himself has a fool for a client."

To continue to itemize the scurrilous, irrelevant, redundant and meaningless assertions, allegations and complaints of the defendant would serve no useful purpose, the court having, in this opinion and to this point, made very clear the nature of the problem with which it is dealing. It is sufficient to say, however, that that which has

been previously adjudicated will not be readjudicated, that which has been reserved for plenary hearing on another date will not be heard before that date, the demands of the defendant will not be permitted to destroy the dignity, decorum and logical administration of justice, and the only issue that will be addressed at this time will be the issue of the propriety of attorney's fees claimed by Attorney Padilla, all in conformity with the oral order of this Court from the bench on November 18, 1977.

To reduce the many pages of defendant's complaints to their basics, it appears that her dissatisfaction or disagreement with the attorney's fee claimed is based upon the following matters:

1. An excessive amount of research involved in a request for recusal;

2. Counsel's failure to follow her directions, as well as permitting plaintiff to move for reconsideration in a collateral but related case;

3. A failure of Mr. Padilla to assert the existence of that collateral but related case;[4]

4. That Padilla continued to engage in research and perform services on her behalf, including services related to the alleged alimony arrearage, without instruction from the defendant, after sending defendant a letter dated September 2, 1977, asserting his intention to withdraw as her counsel on September 15, 1977, unless agreement as to the method of attack could be reached;

5. That Padilla's appearance at the November 2, 1977, hearing was ineffective;

6. That Padilla should have urged the court to require

---

[4] See Johnson v. Johnson, et al., Territorial Court Civil Docket No. 861/1977, Order Vacating Judgment entered November 8, 1977. Of course, it should be noted that the final conclusion of that collateral but related case was the vacation by Judge Finch of the oral judgment entered from the bench and a continuance of the matter for disposition.

plaintiff to pay her attorney's fees in addition to paying money into court to cover mortgage indebtedness.[5]

7. The failure of Attorney Padilla to aid in an appeal of this court's order of November 2, 1977, or to assist in the making of a motion for reconsideration of that order; and, finally,

8. That Padilla continued to negotiate with plaintiff and his attorneys concerning the sale of certain real estate.[6]

This Court has already addressed itself to the complaints numbered 2, 3, 5, and 8, and will not reiterate the comments which it has already made.

The Court cannot and will not conclude that an attorney, notwithstanding his notice to a client of his intention to withdraw, should abandon that client by refusing to do any further work on behalf of the client at a time when motions are pending before the court and ready to be argued. To so hold would be to open a Pandora's box of malpractice suits which this Court, incidentally, does not overlook as one of the possibilities lurking in the depths of this defendant's mind in view of her prior "track record."

Neither can this Court hold deficient the failure of Attorney Padilla to urge payment by plaintiff of counsel fees and the mortgage indebtedness, as defendant demands. The former matter was expressly reserved for determination by the court at a hearing to be held on January 13, 1978, at which time the issues of contempt and alimony arrearages, if any, are to be determined, and the latter falls within that category of adjudicated material to which this Court will not readdress itself.

---

[5] It is also to be remembered that this Court has already determined that all issues involving interests in real estate had been previously adjudicated and were not a justiciable issue for this Court.

[6] It is clear, however, that such negotiations constituted an effort to secure payment of any alimony arrearage which might then have existed.

477

■ This, then, leaves only two areas of concern remaining. The first is defendant's argument that excessive research was done relative to recusal which I will give little or no consideration to for the simple reason that, on the basis of the pleadings submitted, including those previously submitted by the defendant for the November 2, 1977, hearing, it appears that defendant's every waking moment was directed to the insistence on her part that her attorney not only seek but, by whatever means, obtain the recusal of Judge Joseph. It is perhaps unfortunate that human beings are sometimes blinded by their zealousness to attain an unreasonable goal with the result that their limited monetary resources are further depleted or diminished. I can only say that that cliché of days gone by is here appropriate: If one wishes to dance, one must be prepared to pay the piper.

I am unable to determine what it is that defendant seeks with regard to Attorney Padilla's representation of her in the matters which have been addressed in this memorandum. Prior to the November 2 hearing, she evidenced a desire to terminate him as her counsel. At the hearing on November 2, 1977, upon the insistence of the court that her interests would be better protected by having counsel available to her, she concluded and conceded that she desired Attorney Padilla to represent her in all matters then pending, excepting therefrom only the issues of the alleged contempt and alimony arrearage, if any.

Apparently because of her dissatisfaction with the orders entered by this Court on November 3, 1977, and notwithstanding her prior adamant position that Attorney Padilla had failed to perform in a manner commensurate with the standard established in this jurisdiction in a lawyer-client relationship, she nevertheless now demands that he assist her in the filing of an appeal or a motion for reconsideration.

The case, of course, is not ripe for appeal because the orders entered on November 2 are not final, and not having been certified, are not now appealable.

On the motion for reconsideration, although there may be some duty on the part of Attorney Padilla to render assistance, such effort would constitute additional services for which no claim is presently being made and, except insofar as it reflects not only the past, present, and continuing clash between lawyer and client, is meaningless to my determination of the propriety of the fees which he now seeks for the services rendered between May and November, 1977.

Attorney Padilla has submitted to this Court, by date, service and time expended, a breakdown upon which his claim for services is based. This Court cannot say that a charge of $75 per hour is an unreasonable charge, nor can it say that the 15.95 hours alleged by Attorney Padilla to have been spent in the preparation and presentation of this case, supplemented by four hours of court appearance on November 2, is an unreasonable expenditure of time.

The Court is satisfied that the oral retainer agreement between the parties was on the basis of a $75 per hour rate. Defendant's hope to have that charge assessed against plaintiff does not detract from her liability to her attorney by whom the services were rendered on her behalf. I look specifically to paragraph 4 of a pleading entitled, "Answer to Motion of Attorney Padilla . . ." filed by Faith Dane Johnson, pro se, on November 2, 1977, to substantiate my position in this regard. The pertinent language, I believe, to be as follows:

. . . I volunteered that the $75 per hour rate be compelled by the court for Russell Johnson to pay . . .

. . . I stipulated to Mr. Padilla from the beginning that I was unprepared to pay lawyer's fees or an exorbitant third of any rewards derived from my cases . . .

This leaves no doubt in my mind that a retainer arrangement of $75 per hour was discussed, and common sense requires me to conclude that Attorney Padilla expected to be paid on that basis by the party for whom he performed services. Common sense also compels me to conclude that a contingent fee arrangement was expressly rejected by defendant.

 From the foregoing, I am constrained to find that even if a specific hourly rate had not been agreed upon, Attorney Padilla would be entitled to be paid on a quantum meruit basis for the services which he has rendered, that those services were rendered in an appropriate and adequate fashion, and that his claim for fees in the amount of $800, representing slightly more than half of the authenticated expenditure of time, should be approved by this Court and awarded to him without further ado.

The question crosses this Court's mind at this point as to whether the writing of the preceding twelve pages has been an exercise in futility or inefficacy. On reflection, I think not.

There is a lesson to be learned which hopefully can be learned from the contents of this lengthy opinion. The Bar should take heed and demand that it be permitted to "be the lawyer" as a condition precedent to acceptance of employment by any prospective client. Fee arrangements should be reduced to writing wherever possible. The adherence to these two basic precepts will do much to eliminate the kind of conflicting interests, confusion, and destructive forces which are evidenced by and are apparent in the litigation which is the subject matter of this opinion.

Furthermore, all persons should take note that this Court will not tolerate,

frivolous and unfounded claims which can only serve to further clog an already over-worked judicial machinery . . .

Martinez-McBean v. A.F.T. and A.F.L.–C.I.O., supra, at fn. 1.

ORDER

In accordance with the Memorandum Opinion of even date herewith; and the Court being otherwise fully advised in the premises; it is

ORDERED, ADJUDGED and DECREED that Defendant's counsel, Frank Padilla, Esq., be and he hereby is awarded $800.00 in attorney's fees for services rendered to defendant between May and November 1977.