**IN RE: TUTU WELLS CONTAMINATION LITIGATION;
RHODA J. HARTHMAN, ET AL., Plaintiffs
v.
TEXACO, INC., ET AL., Defendants
ESSO STANDARD OIL, S.A., LTD., ET AL.,
Third-Party Plaintiffs
v.
LAGA INDUSTRIES, LTD., ET AL.,
Third-Party Defendants.
FOUR WINDS PARTNERSHIP, Plaintiff
v.
TEXACO CARIBBEAN, INC., ET AL., Defendants.
ESSO STANDARD OIL, S.A., LTD., Counter-claimant and
Third-Party Plaintiff
v.
LAGA INDUSTRIES, LTD., ET AL., Third-Party Defendants**

Master Docket File No. 1989-107

Civ. No. 89-220

Civ. No. 89-224

District of the Virgin Islands

Div. of St. Thomas and St. John

December 11, 1995

223

RICHARD R. KNOEPFEL, ESQ. (BRIGGS, KNOEPFEL & RONCA), Charlotte Amalie, St. Thomas, U.S.V.I., and GORDON RHEA, ESQ., (ALKON, RHEA & HART), Christiansted, St. Croix, U.S.V.I., *for PID-Harthmans.*

ROBERT T. LEHMAN, ESQ. (ARCHER & GREINER, HADDONFIELD), New Jersey, and PATRICIA WELCOME, ESQ., Christiansted, St. Croix, VI, *for Esso Standard Oil, S.A., Ltd., Esso Virgin Islands, Inc., and Esso Standard Oil Co. (P.R.)*

RICHARD E. DALEY, ESQ., LAW OFFICES OF PATTIE & DALEY, Christiansted, St. Croix, U.S.V.I., *for Exxon Corporation*

JOHN A. ZEBEDEE, ESQ., LAW OFFICES OF JAMES L. HYMES, Charlotte Amalie, St. Thomas, U.S.V.I., *for Vernon Morgan*

CAROL ANN RICH, ESQ. (CAMPBELL, ARELLANO & RICH), Charlotte Amalie, St. Thomas, U.S.V.I., *for Ramsay Motors, Inc.*

NANCY D'ANNA, ESQ., Cruz Bay, St. John, U.S.V.I., *for L'Henri, Inc.*

JOHN NEWMAN, ESQ., DIANE SIANA, ESQ. (PORZIO, BROMBERG & NEWMAN, P.C.), Morristown, New Jersey and ROBERT L. TOFEL, ESQ., MARK LOPEMAN, ESQUIRE, TOFEL, BERELSON, SAXL & PARTNERS, P.C., New York, New York, and KEVIN A. RAMES, ESQ., Christiansted, St. Croix, U.S.V.I., *for Paul Lazare, Andreas Gal, The Duplan Corp., Laga Industries, Ltd., Panes Industries Inc. and Panex Co.*

MARC Z. EDELL, ESQ., Morristown, New Jersey, *for Panex Company and Andreas Gal and Paul Lazare as partners of Panex Company*

JOHN R. COON, ESQ., LAW OFFICE OF JOHN R. COON, GALLOWS BAY, St. Croix, U.S. Virgin Islands, *Attorney for Western Auto*

BEFORE: STANLEY S. BROTMAN, *United States District Judge sitting by designation*

## OPINION OF THE COURT

BROTMAN, *District Judge*.

Presently before this court is Porzio, Bromberg & Newman, P.C.'s Emergent Motion, Pursuant to Rules 5.2 and 11.1 of the Local Rules of Civil Procedure of the District Court of the Virgin Islands for an Order Granting Leave to Withdraw as Counsel for the Laga Defendants. For the reasons set forth below, the court will deny this motion.

### I. Factual and Procedural Background

Currently, Porzio, Bromberg & Newman, P.C. (the "Porzio Firm") represents Laga Industries, Ltd., The Duplan Corporation, Panex Industries, Inc., Paul Lazare and Andreas Gal as officers and/or directors of those corporations (collectively referred to as the "Laga Defendants") all of whom are or once were parties in the pending environmental contamination litigation. In addition and relevant for the purposes of this opinion, the Porzio Firm represents the Panex Industries, Inc. Stockholders' Liquidating Trust. Based on the submissions of the various parties, representations by members of the Porzio Firm to this court during prior conferences and as a result of the hearing which this court conducted on December 5, 1995, the court has come to the following understanding of the events which lead to the retention of the Porzio Firm by the Laga Defendants in March 1995.

Originally, the Laga Defendants were represented in all aspects of this litigation by the law firm of Rosenman & Colin (the "Rosenman Firm"). Specifically, as far as the Laga Defendants were concerned, the present litigation had two related, yet distinct components: (1) the environmental litigation including but not limited to the common law as well as the pending claims under CERCLA and (2) the insurance coverage litigation in which the Laga Defendants are attempting to enforce their rights under various insurance policies as a result of any environmental contamination. In September 1994, as the result of a newly identified potential conflict of interest, the Rosenman Firm could no longer continue to represent the Laga Defendants in the pending coverage litigation by or against their insurance carriers. As a result, the

225

Laga Defendants retained the law firm of Tofel, Berelson, Saxl & Partners, P.C. (the "Tofel Firm") as substitute counsel in the insurance coverage matters. With respect to the continuing environmental litigation, the Rosenman Firm continued to represent the Laga Defendants.

Then, in February 1995, the Rosenman Firm moved to withdraw entirely as counsel for the Laga Defendants. As a result, the Laga Defendants requested help in identifying a qualified successor to the Rosenman Firm. Eventually, the Tofel Firm identified the Porzio Firm — a suggestion that the Laga Defendants ultimately accepted and the Porzio Firm was substituted for the Rosenman Firm in March 1995.

The role of the Tofel Firm in identifying a law firm to succeed the Rosenman Firm in handling the environmental litigation is important to the present motion. Upon the request of the Laga Defendants for new counsel, the Tofel Firm had an opportunity to become responsible for the entire litigation rather than the simply the insurance related matters. Nevertheless, the Tofel Firm declined to do so because it lacked the expertise in the area of general environmental litigation to adequately represent the interests of the Laga Defendants. Thus, the court is satisfied that the Tofel Firm and the Porzio Firm are "co-counsel" only in the sense that they both represent the Laga Defendants in matters that relate to or have arisen out of the current litigation. But contrary to the assertions of the Porzio Firm, the court rejects the notion that the Tofel Firm is "co-counsel" in the sense that it is capable of immediately continuing the Porzio Firm's representation of the Laga Defendants in the environmental litigation aspects of this action without prejudice to the client.

In fact, the prior representations of the Porzio Firm undermine its argument that the Tofel Firm is adequate co-counsel. On September 5, 1995, during an in camera review of the fee submissions by the Porzio Firm and the Tofel Firm, both firms specifically advised this court that they represented entirely separate interests of the Laga Defendants. The Tofel Firm stated that it represented the Laga Defendants in the aforementioned environmental insurance matters while the Porzio Firm stated that it represented the Laga Defendants in all other aspects of the environmental litigation

in this case. As a result, the firms asserted that their fee applications could be in no way duplicative.

The concessions made during the in camera review prior to the present motion underscore what is apparently at the heart of the current controversy. When the Porzio Firm agreed to represent the Laga Defendants, it apparently did so with the understanding that the Panex Industries, Inc. Stockholders' Liquidating Trust (the "Trust") would be paying its fees on behalf of all of the Laga Defendants. In April 1995, shortly after the Porzio Firm assumed responsibility for the environmental litigation issues in this matter, this court enjoined the Trust from disbursing any of its assets until further order of this court. Further, in July 1995, upon request of the Laga Defendants and in recognition that their attorneys needed to be compensated so that those parties could continue to be represented, the court modified its April 1995 Order to provide in pertinent part that the court would review, in *camera*, fee applications submitted by their attorneys. As a result of the September 5, 1995 conference requested by the Porzio Firm and the Tofel Firm, the court authorized the payment of over $ 225,000 to those firms from the Trust.

In November 1995, the Porzio Firm submitted a subsequent fee application to this court which gave rise to the present motion. Without addressing the specific details raised in the Porzio Firm's moving papers,[1] the court notes that the Porzio Firm advances three reasons why this court should allow it to withdraw as counsel for the Laga Defendants. First, the Porzio Firm argues that its withdrawal from representing the Laga Defendants will not have a material adverse effect on the interests of the Laga Defendants. Second, the Porzio Firm argues that its withdrawal is warranted because the Laga Defendants have substantially failed to fulfill its obligations to the Porzio Firm. Third, the Porzio Firm

---

[1] The court notes that its hesitation to address each of the Porzio Firm's arguments in detail arises from the court's concern with disclosures of the confidential relationship between the Laga Defendants and their attorneys rather than the merits of the Porzio Firm's arguments. *See*, R.C.P. 1.6; G. Hazard & W. Hodes, 1 The Law of Lawyering, § 1.16:401 at 484 (1990). Despite assertions to the contrary, the court is satisfied that the Porzio Firm demonstrated the highest ethical concern in keeping the confidences of its clients throughout these proceedings both in its submissions to the court as well as in its arguments to this court at the hearing.

argues that the court should allow it to withdraw from the present litigation because failure to do so will result in severe and unreasonable financial burdens to the firm.

## II. The Rules of Professional Conduct

The Local Rules of Civil Procedure of the District Court of the Virgin Islands permit an attorney to withdraw his or her appearance with leave of court and upon notice to the client. V. I. Local R. 5.2. Further, an attorney seeking leave to withdraw from representation of a client in a case pending in the District Court of the Virgin Islands must adhere to the ethical guidelines set forth in the American Bar Association *Rules of Professional Conduct* ("R.P.C.s"). V.I. Local Rule 83.2.

Specifically, Rule 1.16 of the R.P.C.s, which is entitled "Declining or Terminating Representation," is the ethical rule governing this motion. Rule 1.16 states in pertinent part:

(b) [A] lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:
* * *

    (4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

    (5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

    (6) other good cause for withdrawal exists.

(c) When ordered to do so by a tribunal, a lawyer shall continue representation, notwithstanding good cause to terminate the representation.

Rules of Professional Conduct Rule 1.16.

■ Although the Porzio Firm advances three grounds on which it alleges constitute good cause for withdrawal, the court finds that it is unnecessary to engage in an analysis of each of its arguments. Even assuming that the Porzio Firm could demonstrate good cause

228

to meet the requirements of Rule 1.16(b)[2] , Subsection (c) of Rule 1.16 indicates that the court need not grant a motion to withdraw even where a petitioner has shown good cause. As legal scholars have acknowledged, the theory behind Rule 1.16(c) is that, even if withdrawal is otherwise appropriate, other considerations must sometimes take precedence, such as maintaining fairness to litigants and preserving a court's resources and efficiency. *See*, G. Hazard & W. Hodes, 1 The Law of Lawyering, § 1.16:401 at 483 (1990); *see also, Jacobs v. Pendel*, 98 N.J. Super. 252, 236 A.2d 888, 889 (N.J.Super.A.D. 1967) (the determination of whether to allow an attorney to withdraw "depends upon such considerations as proximity of the trial and possibility for the client to obtain other representation").

As the Third Circuit has established, the decision to allow the Porzio Firm to withdraw from the present litigation is addressed to the sound discretion of this court. *Ohntrup v. Firearms Center, Inc.*, 802 F.2d 676, 679 (3d Cir. 1986). Although neither the Porzio Firm nor the court could locate a case which identifies the precise factors which the court should evaluate under Rule 1.16(c), the facts of this case require the court to exercise its discretion to require the Porzio Firm to continue its representation of the Laga Defendants. Rules of Professional Conduct Rule 1.16(c).

First, the court finds that allowing the Porzio Firm to withdraw from its representation of the Laga Defendants would result in severe prejudice. Further, not only would the Laga Defendants be severely prejudiced, but the remaining parties would also be prejudiced by further delays of the trial in this matter. As the Porzio Firm has conceded on several occasions, both the legal issues and the facts involved in this action are extraordinarily complex. Because the court finds that the Tofel Firm is not

---

[2] As discussed later in the opinion, the Porzio Firm has failed to show that its withdrawal from representing the Laga Defendants would not result in a materially adverse effect on the Laga Defendants. Taken in isolation, the court notes in its opinion such an effect would in the normal case be sufficient reason to deny a motion to withdraw. Nevertheless, because Rule 1.16(b) apparently contemplates that an attorney may withdraw from representing a client even if the client suffers a materially adverse effect as a result, the court will not rest its decision to deny the present motion on this ground alone.

prepared to continue the Porzio Firm's representation, any counsel replacing the Porzio Firm would face insurmountable obstacles in attempting to prepare for the January 8, 1996 trial of the common law claims in this action. On the one hand, failure by this court to grant such replacement counsel a continuance of that trial would result in prejudice to the Laga Defendants. On the other hand, any further delay of that trial would result in prejudice to the other litigants in this matter. Such prejudice weighs heavily in the court's determination of whether to deny the Porzio Firm's motion. *Johnson v. Johnson*, 14 V.I. 466, 477 (D.V.I. 1977) (holding that it was inappropriate to allow petitioner to withdraw while motions were pending before the court and ready to be argued); *Jacobs*, 236 A.2d at 890 (attorney requesting withdrawal "must make his application promptly for the purpose of affording his client an opportunity to obtain other counsel sufficiently in advance of the trial date as will permit reasonable preparation"); *Fessler v. Weiss*, 348 Ill. App. 21, 107 N.E.2d 795, 798 (Ill.App. 1952) (same).

■ Second, the court finds that the Porzio Firm has professional obligations to the court and our judicial system which weigh in favor of denying the present motion. As one court in this Circuit has recognized, "when an attorney agrees to undertake the representation of a client, he or she is under an obligation to see the work through to completion." *Haines v. Liggett Group, Inc.*, 814 F. Supp. 414, 424 (D.N.J. 1993). Attorneys can not dispose of this obligation easily. As one court noted:

> An attorney has certain obligations and duties to a client once representation is undertaken. These obligations do not evaporate because the case becomes more complicated or the work more arduous or the retainer not as profitable as first contemplated or imagined. Attorneys must never lose sight of the fact that the profession is a branch of the administration of justice and not a mere money-getting trade. . . . The lawyer should not throw up the unfinished task to the detriment of his client.

*Kriegsman v. Kriegsman*, 150 N.J. Super. 474, 375 A.2d 1253, 1255 (N.J.Super.A.D. 1977) (citations omitted). *See also, U.S. v. Accetturo*, 842 F.2d 1408, 1412 (3d Cir. 1988) ("[a]ttorneys are officers of the court, and are bound to render service when required by such an

appointment") quoting *Powell v. Alabama*, 287 U.S. 45, 73, 77 L. Ed. 158, 53 S. Ct. 55 (1932); *Fessler*, 107 N.E.2d at 798 (petitioner denied application to withdraw when defendant-client's insurance company became insolvent and could no longer pay client's legal fees).

■ Third, the facts of this case alone suggest that allowing withdrawal of the Porzio Firm would be inappropriate. The gravamen of the Porzio Firm's motion is its perceived inability to be paid on a timely manner for their services in the pending trial of the common law issues in this case. While the court acknowledges that the costs of representing the Laga Defendants may be great, the court is simply not convinced that the Porzio Firm will not eventually be paid. As a result of the present motion, Mr. Lazare and Mr. Gal has made certain personal guarantees to the Porzio Firm. Further, during a conference with counsel for the Laga Defendants at the December 5, 1995 hearing, the Laga Defendants agreed to deposit substantial additional sums into the Trust primarily to cover the outstanding bills of the Porzio Firm, the expected out-of-pocket expenses that the Porzio Firm anticipates it will expend as a result of the pending trial as well as some future payments to the Porzio Firm.[3]

In addition, the court is aware of at least $ 225,000 in payments received by the Porzio Firm to date for its efforts from the Laga Defendants — a large portion of this money can no doubt be attributed to the Porzio Firm's efforts at becoming familiar with the case. Now that it has done so, it is inappropriate for the firm to abandon its clients just before being called upon to represent these clients on the merits of the present action. *Cf., Kriegsman*, 375 A.2d at 1255 (denying motion to withdraw where firm having accepted a retainer moves to withdraw when payment for services is not

---

[3] The court notes that in addition to its own fees, the Porzio Firm was very concerned that the Laga Defendants have not, as yet, fully paid certain of their intended experts for the pending common law trial. During a conference with counsel, the court directed the Tofel Firm to use its best efforts to resolve the fee dispute with such experts. Failure by the Laga Defendants to pay for experts — realizing the importance of expert testimony in environmental contamination matters — will no doubt substantially prejudice their position but that such failure does not and can not reflect on the quality of representation by the Porzio Firm. If the Laga Defendants fall to arrange for the necessary experts and receive an adverse verdict as a result of that failure, the Laga Defendants, not *any* of its counsel, must solely bear that responsibility.

immediately forthcoming); *see also*, G. Hazard & W. Hodes, 1 The Law of Lawyering, § 1.16:402 at 484 ("It is doubtful that many courts would relieve a lawyer [from the obligation of continuing to represent a client] in the midst of litigation because of a fee dispute"). When the Porzio Firm undertook its representation of the Laga Defendants, it undoubtedly was aware not only of the existence of the Trust but also of the provision in that Trust which provides that the shareholders may be required to repay disbursements from the Trust in the event that the liabilities of the Trust exceeded its assets; thus, the Porzio Firm is aware of one potentially large source for payment of its fees. *See generally*, *In Re Tutu Wells Contamination Litigation*, 885 F. Supp. 776 (D.V.I. 1995).

Finally, viewed from the perspective of the Laga Defendants, to allow their attorneys to abandon them as a result of the court issuing an unfavorable opinion would not only add insult to injury but would seriously undermine the credibility of our judicial system. *Haines*, 814 F. Supp. at 427 ("As for [the party whose attorney is seeking to withdraw from continuing to represent that party], the disappointment at having been abandoned at midstream is likely to undermine faith in the legal system").

### III. Conclusion

For the reasons set forth in this opinion, the court will deny Porzio, Bromberg & Newman, P.C.'s Emergent Motion, Pursuant to Rules 5.2 and 11.1, of the Local Rules of Civil Procedure of the District Court of the Virgin Islands for an Order Granting Leave to Withdraw as Counsel for the Laga Defendants. The court will enter an appropriate order.
Dated: December 6, 1995.

### ORDER

Presently before this court is Porzio, Bromberg & Newman, P.C.'s Emergent Motion, Pursuant to Rules 5.2 and 11.1 of the Local Rules of Civil Procedure of the District Court of the Virgin Islands for an Order Granting Leave to Withdraw as Counsel for the Laga Defendants;

Upon review of the submissions of the parties; and

Having considered the arguments raised by the parties at the hearing on December 5, 1995; and

For the reasons set forth in the court's opinion of this date; and

For other good cause;

IT IS on this 6th day of December 1995;

**ORDERED** that Porzio, Bromberg & Newman, P.C.'s Emergent Motion, Pursuant to Rules 5.2 and 11.1 of the Local Rules of Civil Procedure of the District Court of the Virgin Islands for an Order Granting Leave to Withdraw as Counsel for the Laga Defendants is hereby **DENIED**; and it is further

**ORDERED** that the Porzio Firm will continue to represent the Laga Defendants including the Panex Industries Inc., Stockholders' Liquidating Trust until further order of this court.

No costs.