[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10358
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-00366-MW-GRJ

HARVEY PORTNOY,

Plaintiff-Appellant,

versus

THE UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 23, 2020)

Before WILLIAM PRYOR, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Harvey Portnoy appeals the district court's dismissal of his wrongful death and personal injury claims under the Federal Tort Claims Act ("FTCA") following his father's death at a Florida Veterans Administration ("VA") hospital. Portnoy also challenges the district court's pre-dismissal grant of his attorney's motion to withdraw after finding that Portnoy made "continued representation personally and ethically untenable for his lawyer." In the five months following his attorney's withdrawal, Portnoy failed to secure another attorney. The district court therefore dismissed Portnoy's claims without prejudice because Portnoy could not proceed *pro se* as the representative of his father's estate.

Portnoy presents three arguments on appeal. First, Portnoy argues that the circumstances did not warrant permissive withdrawal and he was prejudiced by the withdrawal because it was impossible for him to find another attorney. Second, Portnoy asserts that the district court erred in dismissing his case, as he should have been permitted to proceed *pro se* because his own personal interests were at stake. Third, Portnoy argues that the Florida Wrongful Death Act ("FWDA"), which limits damages available under the FTCA, is unconstitutional. Because Portnoy did not assert that the district court should have allowed him to proceed *pro se* in his initial brief, we do not address that issue here. Nor do we address Portnoy's constitutional challenge because he failed to raise that issue below. The record shows that good cause for withdrawal existed and Portnoy's interests were

2

not materially affected by the withdrawal; therefore, we affirm the district court's orders allowing the withdrawal and dismissing Portnoy's complaint.

## I. Background

### A. Bacharach's First Motion to Withdraw

On December 7, 2016, Portnoy, in his capacity as the personal representative of his father's estate, sued the United States for negligent injury and wrongful death stemming from his father's death at a VA hospital in 2012. Portnoy alleged that the VA hospital's negligence during his father's surgery resulted in a bacterial infection, and that infection caused his death. Portnoy's original complaint brought two claims for relief pursuant to the FTCA: wrongful death (Count I) and personal injury damages (Count II). In its answer, the government denied Portnoy's allegations and raised several defenses, including that Portnoy failed to state a claim, and that the applicable provisions of the FWDA limited any available damages.

On October 20, 2017, the district court ordered Portnoy to show cause as to why his claim for personal injury damages (Count II) should not be dismissed for failure to state a claim.[1] After the district court granted Portnoy two extensions of

---

[1] The FTCA provides district courts with jurisdiction over civil actions against the United States for money damages for personal injury or death caused by the negligent or wrongful act of a government employee. The United States can be held liable under the FTCA "in accordance with the law of the place where the act or omission occurred," which in this case is Florida. 28 U.S.C. § 1346(b)(1). The FWDA, as the district court explained, "eliminates a claim for the

time in which to respond to the court's order, on November 8, 2017, Portnoy's attorney, N. Albert Bacharach, filed a response to the show-cause order. Bacharach explained that Portnoy was "refusing to take counsel's advise [sic] and [was] refusing to authorize [Bacharach] to respond with a legal position that takes the provable facts in this matter into account and to set forth a comprehensive legal argument in this matter."

That same day, Bacharach moved for leave to withdraw from representation pursuant to Rule 11.1(H) of the Local Rules of the U.S. District Court for the Northern District of Florida ("Local Rule 11.1(H)"), which allows withdrawal only with the permission of the district court. He claimed that "[d]espite frequent communication between Plaintiff Portnoy and undersigned counsel and his staff, numerous issues have arisen between Plaintiff Portnoy and the undersigned counsel regarding undersigned counsel's representation of Plaintiff." Bacharach further stated that "Plaintiff Portnoy no longer has confidence in undersigned counsel and no longer believes the undersigned is acting in his best interest." Specifically, Portnoy believed Bacharach was "in collusion with the Veterans Administrations and the U.S. Attorney's Office." Bacharach also indicated that

---

decedent's personal injury from the date of the injury to the date of death when the claim is brought with a wrongful death claim." The district court was therefore concerned that Portnoy was "attempting to bring a personal injury action in Count II that, under Florida law, is eliminated by the wrongful death action in Count I."

4

Portnoy had been in contact with the Florida Bar and other attorneys regarding the case and that Portnoy no longer believed that Bacharach was acting in his best interest. Thus, Bacharach stated that he could no longer effectively represent Portnoy and requested leave to withdraw from representation.

On November 15, 2017, the district court held a hearing on Bacharach's motion for leave to withdraw. During the hearing, Bacharach stated that Portnoy's lack of confidence in his representation was the "underlying issue," as evidenced by Portnoy's "repeated" calls to the Florida Bar to complain about him and Portnoy's conversations with other attorneys about Bacharach mishandling the case. Portnoy explained that his chief qualm was that Bacharach was moving too slowly and Bacharach was "exaggerating about calling the Florida Bar all the time." The district court expressed concerns about whether Portnoy would be able to proceed *pro se* as the representative of his father's estate should it allow Bacharach to withdraw. Further, if the law did not allow Portnoy to proceed *pro se*, the court observed, and Portnoy could not find another attorney, then Portnoy might be prejudiced by the withdrawal.

The district court denied the motion to withdraw without prejudice and instead gave Portnoy an opportunity to file an amended complaint. On November 27, 2017, Portnoy filed an amended complaint, asserting similar claims: "Wrongful

Death" (Count I) and "Survival Action" (Count II).[2]  On December 22, 2017, the government answered the amended complaint consistent with its original answer.

B. Second Motion to Withdraw

On February 5, 2018, Portnoy sent a letter to the district court judge requesting the district court to "[i]ssue an [o]rder for [m]ediation to begin [i]mmediately and [a]ppoint a [m]ediator to [s]ee [i]f all issues involved with this case, can be resolved in a [sic] amicable way beneficial to all parties concerned." He described his many complaints with Bacharach, including that he was "difficult to ever get ahold of," and "waited until the very last minute" to file pleadings.  At the same time, Portnoy acknowledged that he would not be able to find another attorney to replace Bacharach if he withdrew.  Portnoy also mentioned that he was living in the streets, because he lost the use of his father's house after his death. The district court denied Portnoy's mediation request as a nullity on February 7, 2018.

On June 15, 2018, Bacharach filed a second motion to withdraw pursuant to Local Rule 11.1(H) and Rule 4-1.16 of the Rules Regulating the Florida Bar ("Florida Bar Rule 4-1.16").  Florida Bar Rule 4-1.16 allows an attorney to withdraw from representing a client in certain circumstances, including where

---

[2] The "Survival Action" claim (Count II) alleges that, as a result of the VA's negligence, Portnoy's father experienced bodily injury, pain and suffering, and loss of earnings from the time he developed the infection until his death.

"withdrawal can be accomplished without material adverse effect on the interests of the client . . . or other good cause for withdrawal exists." R. Regulating Fla. Bar 4-1.16(b).

Bacharach explained that Portnoy had filed a complaint against him in February and quoted non-privileged portions of his response to the Florida Bar:

> Enclosed please find: a print out of the history of Mr. Portnoy's case as maintained by the Prevail Case Management Soft used by my office; a print out of just the telephone contact with Mr. Portnoy from the Prevail history, which shows over 28 hours of phone calls with Mr. Portnoy; a print out of the Docket of the United States District Court (USDC) for the Northern District of Florida regarding Mr. Portnoy 's Federal Tort Claim against the United states [sic]; a minute order from USDC Judge Walker dated November 15, 2017; plaintiff's first amended complaint dated November 27, 2017; Mr. Portnoy latter [sic] to Judge Walker filed into the record on February 5, 2018; USDC Judge Walker's Order denying Mr. Portnoy 's letter,/motion [sic]; and my letters to Mr. Portnoy of June 8, 2016 and February, 9, 2018. On the face of the enclosed documents it is clear that Mr. Portnoys [sic] complaints regard[ing] me and my staff are not substantiated. . . .
>
> Mr. Portnoy has spoken with me repeatedly regarding my providing him with financial help. I have repeatedly recommended that Mr. Portnoy to [sic] contact food banks and homeless shelters in the Ocala area seeking assistance. I have also repeatedly [suggested contacting] his local rabbis (Mr. Portnoy is Jewish) for financial assistance. This advice was in the context of my repeatedly explaining that I was not allowed to give, loan or advance Mr. Portnoy money. I explained to him that as a member of the Florida Bar I was prohibited from loaning or advancing him money to be repaid from any possible settlement, for the purchase of the car. Mr. Portnoy's response was that I was lying and that the Bar has told him that I could lend him money and that maybe I should have to explain to the Bar why I would not help him. In addition, Mr Portnoy has repeatedly suggested that I could buy him a new car or van under the table; and who would know? . . . .

On or around May 3, 2018, the Florida Bar informed Bacharach that there was insufficient evidence that Bacharach had violated any rules in his representation of Portnoy and therefore it closed the file.

Bacharach also included his notes from a May 10, 2018 phone call with Portnoy:

> Spoke to Mr Portnoy for an hour and 55 minutes. Started with telling me that he had spoken with the Bar after they did not find violation of the rules and told me that he had called and complained and Ms. Craft admitted that she hadn't read the complete Bar file and would give the Bar file to another Bar attorney who would read everything. I explained that I found his Bar complaints distracting and it makes it difficult to represent him. He followed up that with [sic] the Bar was going to make me sign a declaration under penalty of perjury that I don't have a conflict because I'm friends with the VA administrators and that's why I wasn't trying to win his case. Then he brought up his need for a loan for the purchase of a car or car [sic]. When I told him Bar rules prohibited me from loaning him money or buying him a car; he told me that the Bar also told him that he could request review of the decision to close his complaint and that this wasn't over. Then he talked about his fathers [sic] house and said that he had recorded our calls from the house and that I had agreed to represent him. I told him that it was illegal in Florida to tape conversations with other people without their permission, that he didn't have my permission to record our calls; and that he shouldn't record calls with others, especially people working at the Bar.

Indeed, shortly after this call—on May 24, 2018—the Florida Bar sent Bacharach a letter informing him that Portnoy had requested a review of the decision to close the complaint. Bacharach claimed that Portnoy's threats and complaints to the Florida Bar "are extremely stressful and are objectively taking a toll on

8

[Bacharach's] health" . . . "to the extent that it materially impairs the [his] ability (and desire) to represent this particular client."

On June 20, 2018, Portnoy filed a written response, again complaining about Bacharach's efforts. He claimed that his "suffering and losses '*are still mounting*' . . . because of [Bacharach's] *stalling & latency* in presenting [his] case to the court system!" He further stated that Bacharach was "also 'taking advantage' of the fact that I would not be able to find another lawyer!! Perhaps not, and certainly at this point!!" And he asserted that Bacharach was not presenting the "'true facts' of the case to the Court."

The district court held a hearing on Bacharach's motion to withdraw, during which Portnoy described his issues with Bacharach, consistent with his written complaints. He told the district court that one of his main disagreements with Bacharach arose from the October 20, 2017 show cause order: Bacharach recommended dropping the wrongful death claim and pursuing only a claim for pain and suffering on behalf of the patient. Portnoy vehemently disagreed. Further, Portnoy explained that he had tried to find another lawyer but had not been able to secure one because lawyers "don't want to touch" a VA case or get involved in an ongoing case. When asked for its position on Bacharach's motion to withdraw, the government replied that it did not have one. The district court then offered its observations on the issue. The main issue for the district court was

9

how to balance "the discord, which is certainly a permissive basis to withdraw . . . against the prejudice to the client." It announced that it would balance those interests and issue a written order.

On June 27, 2018, the district court issued a written order granting the motion to withdraw. It stated that "[i]t became abundantly clear at the hearing that Plaintiff and his counsel cannot work together in a manner to give Plaintiff effective legal representation. Therefore, under Rule 4-1.16(b) of the Rules Regulating the Florida Bar, permissive withdrawal of Plaintiff's counsel is appropriate."[3] The district court also noted that Portnoy needed to obtain new counsel because "[t]he right to appear *pro se* does not extend to those cases when parties are not conducting their own cases and therefore does not apply to persons representing the interests of others." Because Portnoy was not conducting his own case, and was representing the interests of others, the district court stayed the case for 90 days to allow Portnoy to obtain new counsel.

C. Dismissal of Portnoy's Complaint

---

[3] Bacharach actually brought his withdrawal claim under Florida Bar Rule 4-1.16(a), which mandates withdrawal "from the representation of a client if . . . the representation will result in violation of the Rules of Professional Conduct or law [or] . . . the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client." He presented arguments pursuant to both mandatory withdrawal under 4-1.16(a) and permissive withdrawal under 4-1.16(b). In its order granting Bacharach's motion to withdraw, the district court declined to address Bacharach's argument for mandatory withdrawal. We also do not address the propriety of mandatory withdrawal on appeal because the parties do not address it in their briefs.

Portnoy moved for an extension of time to obtain new counsel and an order for mediation on September 24, 2018. He stated that he could not find another attorney because few attorneys are willing to take on complex VA cases. He also asserted that one of the reasons that no attorney was willing to accept his case was because Florida's limitations on damages only allows a "spouse [to] seek viable redress, and obtain Counsel to do so in a medical malpractice issue." The district court denied the motion and reiterated that Portnoy did not have the right to proceed *pro se* in this case.

On November 29, 2018, the district court held a hearing on the issue. At the hearing, Portnoy confirmed that no lawyer had indicated that they would take on his case. The government stated its position: "that the Court has given Mr. Portnoy ample time to secure alternative representation for him in his capacity as the alleged personal representative of the estate. And so without having a lawyer to represent him, the case [is] due to be dismissed."

The district court dismissed Portnoy's complaint without prejudice. It explained that it had given Portnoy an additional five months to find an attorney, but Portnoy's diligent efforts "clearly [had] not come to any fruition." Therefore, the district court "dismiss[ed] the complaint based on the fact that the estate cannot proceed without a lawyer. And under the law of this circuit you cannot represent

11

the estate as a pro se litigant." Portnoy appealed the district court's orders granting Bacharach's motion to withdraw and dismissing his case.

## II. Standards of Review

We review a district court's decision regarding an attorney's motion to withdraw representation for abuse of discretion. *See In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999) (bankruptcy appeal); *Mekdeci v. Merrell Nat. Lab.*, 711 F.2d 1510, 1521 (11th Cir. 1983). "Discretion means the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Betty K. Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005) (quoting *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1324 (11th Cir. 2005)).

We also review a dismissal for failure to comply with an order of the district court for abuse of discretion. *See Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999). Generally, where the litigant has been forewarned, dismissal for failure to obey a court order is not an abuse of discretion. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Furthermore, a dismissal without prejudice is generally not an abuse of discretion. *See Dynes v. Army Air Force Exch. Serv.*, 720 F.2d 1495, 1499 (11th Cir. 1983).

## III. Discussion

A. The District Court Did Not Err in Granting Bacharach's Motion to Withdraw

We first consider whether the district court abused its discretion in granting Bacharach leave to withdraw.  In the Northern District of Florida, two rules govern attorney withdrawal: Local Rule 11.1(H) and Florida Bar Rule 4-1.16.  Local Rule 11.1(H) permits an attorney who has appeared in a case to withdraw if the court grants leave to withdraw, provided that the attorney does not move to withdraw without first giving 14 days' notice to the client and that the motion sets out the client's position on the motion.  N.D. Fla. Local R. 11.1(H).  Additionally, under the Rules Regulating the Florida Bar—which govern the conduct of attorneys admitted to practice in the Northern District of Florida—a lawyer may withdraw representation if: (1) withdrawal can be accomplished without material adverse effect on the interests of the client; (2) the client insists upon taking action that the lawyer considers repugnant, imprudent, or with which the lawyer has a fundamental disagreement; (3) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled; (4) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or (5) other good cause for withdrawal exists.  R. Regulating Fla. Bar 4-1.16(b)(1–5); N.D. Fla. Local R. 11.1(A).  In general, withdrawal does not materially affect the client's interests if

13

the case has not been scheduled for trial and the client has ample time to obtain new counsel. *See Fisher v. State*, 248 So. 2d 479, 486 (Fla. 1971). Permission to withdraw pursuant to Florida Bar Rule 4-1.16, while always within the discretion of the trial court, is proper if the attorney "can show that the withdrawal will not prejudice the client or that there is good cause, affecting the relationship between the lawyer and the client, for the withdrawal." *In re Davis*, 258 B.R. 510, 513 (Bankr. M.D. Fla. 2001) (citing *Sands v. Moron*, 339 So. 2d 307, 307 (Fla. Dist. Ct. App. 1976)).

Here, the district court did not abuse its discretion by allowing Bacharach to withdraw because Portnoy's behavior made it unreasonably difficult for representation to continue, and Portnoy demanded that Bacharach engage in objectionable behavior. Portnoy repeatedly asked Bacharach for money and threatened to use the Florida Bar attorney complaint process as a cudgel to extract payments. The record shows that, on numerous occasions, Portnoy hounded Bacharach for financial assistance which Bacharach was ethically barred from providing. Each time, Bacharach explained that as a member of the Florida Bar, he was prohibited from advancing or loaning Portnoy money, but suggested charitable organizations for Bacharach to contact for help. In response, Portnoy called Bacharach a liar and that stated that perhaps Bacharach "should have to explain to the Bar why [he] would not help [Portnoy]."

14

Indeed, Portnoy pursued complaints against Portnoy with the Florida Bar. The record shows that beginning around May 2016 Portnoy repeatedly called the Florida Bar to complain about Bacharach's representation of him. He also complained about Bacharach's handling of the case to other attorneys. In February 2018, Bacharach learned that Portnoy had made a formal Bar complaint, which the Florida Bar dismissed on May 2, 2018. And on May 10, 2018—about a week after the Florida Bar closed the file on that complaint—Portnoy called Bacharach and again asked for a loan. Yet again Bacharach informed Portnoy that the Bar Rules prevented him from loaning him money and Portnoy responded that he could request review of the decision to close his complaint. Portnoy did just that: two weeks after the May 10, 2018 conversation, Bacharach received a letter from the Florida Bar that Portnoy had requested review of the decision to close the complaint.

By Portnoy's own admissions, he had completely lost trust in Bacharach. Portnoy stated that Bacharach "thinks that my case is a joke," and that Bacharach "ha[s] [t]he Defendant's interests . . . 'ahead of' my interests." Portnoy even accused Bacharach of colluding with the VA and the U.S. Attorney's Office and distorting the facts of the case. And, at bottom, Portnoy strongly disagreed with Bacharach's strategic decisions, including Bacharach's recommendation to drop the wrongful death charge following the district court's show cause order. In the

15

two hearings the district court held regarding Bacharach's motions to withdraw, and his written submissions to the court, Portnoy did not dispute any of these facts.

Because our review of the record shows that Portnoy's actions made Bacharach's representation of him untenable and Portnoy pressured Bacharach to engage in behavior that would violate the rules of the Florida Bar, good cause existed for Bacharach to withdraw. Moreover, at the time of the withdrawal, this case was scheduled for trial and the district court afforded Portnoy five months to obtain counsel. He was therefore not materially affected by the withdrawal. *See Fisher*, 248 So. 2d at 486. Thus, Bacharach met the standard for permissive withdrawal under Florida Bar Rule 4-1.16 and the district court did not abuse its discretion by allowing him to withdraw. We therefore affirm the district court's order granting Bacharach's motion to withdraw.

B. Portnoy's Challenge to the District Court's Dismissal of His Complaint

We next turn to Portnoy's argument that the district court erred in dismissing his case because he should have been allowed to proceed *pro se* as the representative of his father's estate. We need not address this issue because Portnoy waived it by not raising it in his initial brief. *See United States v. Higdon*, 418 F.3d 1136, 1137 (11th Cir. 2005) ("[N]ew issues not raised in opening briefs will not be considered by the court.").

16

In his initial brief on appeal, Portnoy does not make any specific arguments that the district court erred in dismissing his complaint because he could not proceed *pro se* as the representative of an estate, although he generally argues that "the district court erred." Instead, he argues that the FWDA is unconstitutional because it denies certain individuals, such as himself, access to due process and other constitutional rights.[4] He further argues that that the law's limitations on recovery made it impossible for him to secure new counsel following Bacharach's withdrawal. The government responds that the district court properly dismissed the action because plaintiffs suing as representatives of an estate cannot proceed *pro se*. Portnoy asserts in his reply brief that he had the right to represent himself because his personal interests were at stake and therefore the district court erred in dismissing his case for failure to obtain counsel.

*Pro se* pleadings are liberally construed and held to less stringent standards than those drafted by lawyers. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). Nevertheless, a court may not "serve as *de facto* counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701,

---

[4] The FWDA limits damages to spouses and children of the deceased under the age of 25. Fla. Stat. Ann. § 768.21.

17

709 (11th Cir. 2010).  And in general, a defendant's *pro se* status in civil litigation will not excuse his failure to follow procedural rules.  *McNeil v. United States*, 508 U.S. 106, 113 (1993).  Relevant here is the requirement that parties submit all issues on appeal in their initial briefs.  Fed. R. App. P. 28(a)(5); 11th Cir. R. 28-1(h); *United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000).  Thus, we deem an argument abandoned where the appellant raises it for the first time in a reply brief.  *See United States v. Magluta¸* 418 F.3d 1166, 1185–86 (11th Cir. 2005).

Accordingly, we hold that Portnoy abandoned his argument that the district court should have allowed him to proceed *pro se* by raising it for the first time in his reply brief.  Even construing his initial brief liberally, nowhere does Portnoy object to the district court's dismissal on the ground that he should have been allowed to proceed *pro se.*  Instead, Portnoy objects that the FWDA unconstitutionally limits recovery to the deceased's spouse and children under the age of 25.  And that limitation, in turn, dissuaded attorneys from taking his case. In short, in his initial brief, Portnoy attributes the district court's error to his inability to find another attorney—not any right to proceed *pro se*.  He claimed a right to proceed *pro se* only after the government teed up the issue in its brief.  We therefore do not address this argument.

C. Portnoy's Constitutional Challenge to the FWDA

Portnoy has also waived his constitutional challenge to the FWDA.  On appeal, Portnoy argues that the FWDA is unconstitutional because it limits recovery to the deceased's spouse and children under the age of 25.

Arguments raised for the first time on appeal that were not presented in the district court are generally deemed waived.  *See Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994).  But we have permitted issues to be raised for the first time on appeal under five circumstances: (1) the issue "involves a pure question of law and . . . refusal to consider it would result in a miscarriage of justice;" (2) "where the appellant raises an objection to an order which he had no opportunity to raise at the district court level;" (3) "where the interest of substantial justice is at stake;" (4) "where the proper resolution is beyond any doubt;" or (5) "if the issue presents significant questions of general impact or of great public concern."  *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (quoting *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001)).

Portnoy did not raise his constitutional challenge to the FWDA before the district court.  And on appeal, he fails to present any applicable exceptions to the general rule that issues raised for the first time on appeal are deemed abandoned.  Accordingly, Portnoy has waived his constitutional argument, and we need not

19

consider it.  We therefore affirm the district court's dismissal without prejudice of Portnoy's complaint.

**AFFIRMED.**